In The


 

Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-01-078 CV


____________________



WILLIAM J. BEASLEY, ET AL., Appellants



V.



MARIA MOLETT, Appellee






On Appeal from the 284th District Court


Montgomery County, Texas


Trial Cause No. 00-06-03412-CV






OPINION


 William J. Beasley and others (1) sought to enjoin all judicial proceedings currently
being conducted under the terms of the Civil Commitment of Sexually Violent Predators
Act ("Act"), Title 11, Chapter 841 of the Texas Health and Safety Code, and requested
that Maria Molett, the Council on Sex Offender Treatment's representative on the
multidisciplinary team ("Team"), and her successors be enjoined from attending meetings
of the Team. They also sought a judgment declaring the statute unconstitutional on its face
and in its application. The trial court denied the relief requested. This appeal raises issues
concerning due process, equal protection, the Fifth and Sixth Amendments, separation of
powers, double jeopardy, ex post facto law, and the Texas Open Meetings Act. 

The Act


 In the first section of the Act, the Texas Legislature in effect set out the purpose for
the Act in legislative findings, as follows: 

 § 841.001. Legislative Findings

 The legislature finds that a small but extremely dangerous group of
sexually violent predators exists and that those predators have a behavioral
abnormality that is not amenable to traditional mental illness treatment
modalities and that makes the predators likely to engage in repeated
predatory acts of sexual violence. The legislature finds that the existing
involuntary commitment provisions of Subtitle C, Title 7, are inadequate to
address the risk of repeated predatory behavior that sexually violent
predators pose to society. The legislature further finds that treatment
modalities for sexually violent predators are different from the traditional
treatment modalities for persons appropriate for involuntary commitment
under Subtitle C, Title 7. Thus, the legislature finds that a civil commitment
procedure for the long-term supervision and treatment of sexually violent
predators is necessary and in the interest of the state. 


Tex. Health & Safety Code Ann. § 841.001 (Vernon Supp. 2003). The Act then sets
forth a civil commitment procedure for the long-term supervision and treatment of sexually
violent predators. 

 The statute is attacked in this proceeding as unconstitutional. In cases involving
assertions that a statute is unconstitutional, courts begin the analysis with a presumption
that the statute is valid. Texas Workers' Compensation Comm'n v. Garcia, 893 S.W.2d
504, 520 (Tex. 1995). The legislature is presumed not to have acted unreasonably or
arbitrarily. Id. A mere difference of opinion, where reasonable minds could differ, is not
a sufficient basis for striking down legislation as arbitrary or unreasonable. Id. The
wisdom or expediency of the law is the legislature's prerogative. Id. 

 For the reasons detailed below, we affirm the trial court's judgment.

Due Process and Equal Protection:


Behavioral Abnormality Standard



 Appellants contend in issue I.A. that the "behavioral abnormality" standard
expressed in the Act violates due process because, they say, the standard does not require
a "mental" condition. Section 841.003 of the Act defines a sexually violent predator as
a repeat sexually violent offender who suffers from a behavioral abnormality that makes
the person likely to engage in a predatory act of sexual violence. Tex. Health & Safety
Code Ann. § 841.003 (Vernon Supp. 2003). Section 841.002(2) of the Act defines
"behavioral abnormality" as a "congenital or acquired condition that, by affecting a
person's emotional or volitional capacity, predisposes the person to commit a sexually
violent offense, to the extent that the person becomes a menace to the health and safety of
another person." Tex. Health & Safety Code Ann. § 841.002(2) (Vernon Supp. 2003).
 In Kansas v. Hendricks, 521 U.S. 346, 357, 117 S.Ct. 2072, 138 L.Ed.2d 501
(1997), the Supreme Court held that a Kansas law dealing with sexual predators did not
violate due process. The Kansas law required a showing that the person sought to be
committed had been convicted of or charged with a sexually violent offense and that the
person suffered from a mental abnormality or personality disorder, making the person
likely to engage in predatory acts of sexual violence. Id. 521 U.S. at 351-52. The law
defined a mental abnormality as "a congenital or acquired condition affecting the emotional
or volitional capacity which predisposes the person to commit sexually violent offenses in
a degree constituting such person a menace to the health and safety of others." See Kan.
Stat. Ann. § 59-29a02(b) (1994). 

 Appellants concede that the Texas definition of "behavioral abnormality" is virtually
the same as the Kansas definition of "mental abnormality." However, they argue that the
Texas statute does not meet due process requirements because it does not use the term
"mental" in its description of the condition required for commitment. But the United
States Supreme Court has held that state legislatures are not required to adopt a particular
nomenclature in drafting civil commitment statutes. Hendricks, 521 U.S. at 359. 
Statutory terms need not mirror terms used by the medical profession; they serve different
purposes. Id. Furthermore, we focus not on the label but on the proof requirement itself
as set forth in the definition. Because the proof requirement of the Act is virtually the
same as that upheld in Hendricks, we reject appellants' due process challenge to the
"behavioral abnormality" standard. 

 Appellants argue that the Act violates equal protection because it allows a category
of sex offenders targeted by the Act to be civilly committed on the basis of antisocial
personality disorders, while not providing for similar treatment of other violent criminals
on the same basis. We first note that the Act does not use the phrase "antisocial
personality disorder." The Act does target what the legislature characterizes as "a small
but extremely dangerous group of sexually violent predators" who "have a behavioral
abnormality that is not amenable to traditional mental illness treatment modalities and that
makes the predators likely to engage in repeated predatory acts of sexual violence." §
841.001. The legislature found that "the existing involuntary commitment provisions . .
. are inadequate to address the risk of repeated predatory behavior that sexually violent
predators pose to society." Id. Appellants do not challenge the legislative findings. 

 Under the rational relation test, the statutory distinction is presumed constitutional
as long as the distinction is rationally related to a legitimate governmental purpose. See
Kadrmas v. Dickinson Pub. Schs., 487 U.S. 450, 457-58, 108 S.Ct. 2481, 101 L.Ed 2d
399 (1988). Given the inadequacy of the ordinary civil commitment process and treatment
modalities, the Act's establishment of a separate civil commitment procedure that provides
long-term supervision and outpatient treatment for sexually violent predators is rationally
related to the legitimate governmental purpose of protecting society while providing
necessary treatment and supervision. The Supreme Court has held the legislature is free
to recognize degrees of harm, and the legislature may properly confine restrictions to those
classes of cases where the need is deemed to be clearest. See Minnesota ex rel. Pearson
v. Probate Court of Ramsey County, 309 U.S. 270, 275, 60 S.Ct. 523, 84 L.Ed.744
(1940). The statute is not to be overthrown because there are other instances to which it
might have been applied. Id. Distinguishing a class of sexually violent predators from
violent criminals for the purpose of involuntary commitment does not violate equal
protection rights under the United States Constitution. See id. 309 U.S. at 274-75. We
overrule issue I.A. 

Due Process and Equal Protection:


Expert Testimony 



 In issue I.B., appellants urge the Act violates their rights to due process and equal
protection because, they say, the Act does not require that the determination of status as
a sexually violent predator be based upon competent expert testimony. Article I, section
15-a, of the Texas Constitution provides that no person shall be committed as a person of
unsound mind except on competent medical or psychiatric testimony. See Tex. Const.
art. I, § 15-a. The Act provides, in determining whether to seek commitment of a person,
the multidisciplinary team ("Team") may request the assistance of others in making a
determination of whether the person is likely to commit a sexually violent offense after
release or discharge. See Tex. Health & Safety Code Ann. § 841.022(b), (c) (Vernon
Supp. 2003). If the Team recommends the assessment of a person for a behavioral
abnormality, the Texas Department of Criminal Justice ("TDCJ") or the Texas Department
of Mental Health and Mental Retardation ("MHMR") must use an expert to examine the
person to aid in the determination. See Tex. Health & Safety Code Ann. § 841.023(a)
(Vernon Supp. 2003). Both the person whose commitment is sought and the State are
entitled to an immediate examination of the person by an expert prior to trial. Tex.
Health & Safety Code Ann. § 841.061(c) (Vernon Supp. 2003). These statutory
provisions, when read together with the constitutional requirement that an involuntary
commitment not occur in the absence of competent medical or psychiatric testimony,
indicate the legislature intended there be competent medical or psychiatric testimony to
support an involuntary commitment under the Act, and provided for it therein. Issue I.B.
is overruled.


Due Process and Equal Protection: 


Overt Act or Continuing Behavior Pattern



 Appellants contend in issue I.C. that the Act violates due process and equal
protection because, they say, the Act does not require a recent overt act or continuing
pattern of behavior in order to establish dangerousness, in contrast to such a requirement
in an ordinary civil commitment. The civil commitment statute referenced by appellants
is Tex. Health & Safety Code Ann. § 574.034(d), (e) (Vernon Supp. 2003). 

 We reject the due process challenge to the Act. Although the Act does not require
a "recent overt act," it does require that the person be a repeat sexual offender and have
a behavioral abnormality that makes the person a menace to the health and safety of
another person.

 Equal protection does not require that all persons be dealt with identically, but it
does require that a distinction have some relevance to the purpose for which the
classification is made. Baxstrom v. Herold, 383 U.S. 107, 111, 86 S.Ct. 760, 15 L.Ed.2d
620 (1966). In Baxstrom, the Court held that equal protection was violated where those
committed at the end of prison terms were denied the right to a jury review as to whether
they were mentally ill and in need of hospitalization. Id. The Court found, with respect
to the issue of the right to a determination of those issues by a jury, no conceivable basis
existed for distinguishing the commitment of a person who is nearing the end of a penal
term from other civil commitments. Id. 

 The Act subjects to civil commitment those sexually violent predators who are about
to be released after serving a term of incarceration. Incarceration significantly lowers the
opportunity to commit an overt dangerous act or to be involved in a continuing pattern of
dangerous behavior during the term of incarceration. The lack of recent overt acts or a
continuing pattern of behavior during incarceration would not indicate lack of danger, but
rather the fact of incarceration. Moreover, the Act has its own provisions requiring the
State to establish dangerousness justifying civil commitment. See Tex. Health & Safety
Code Ann. §§ 841.002(2), (5),(6),(8), 841.003 (Vernon Supp. 2003). In establishing a
person's "behavioral abnormality," the State must show that the person has a condition that
predisposes the person to commit a sexually violent offense, to the extent that the person
becomes a menace to the health and safety of another person. See § 841.002(2). A
menace is a threat or imminent danger. We conclude the distinction between the
requirements to establish dangerousness under the Act, compared to an ordinary civil
commitment proceeding, is rationally related to a legitimate governmental purpose. We
overrule issue I.C.



Due Process:


Inconsistency Between Required 


Finding and Burden of Proof



 Appellants assert in issue I.D. that the Act violates due process because it does not
require that the likelihood of future predatory acts of sexual violence be "imminent" or
"substantial," and is therefore inconsistent with the "beyond a reasonable doubt" standard. 
Section 841.003 requires a finding that the person have a behavioral abnormality that
makes the person "likely to engage in a predatory act of sexual violence." As we
understand appellants' initial argument, it is that the use of the term "likely," while
sufficient to describe the risk of harm when the burden of proof is by a preponderance of
the evidence or by clear and convincing evidence, becomes insufficient when the burden
of proof is beyond a reasonable doubt. Appellants also contend that the mere possibility
or potential for harm is not serious enough to warrant a deprivation of liberty. 

 Appellants rely on the cases of In re Linehan, 557 N.W.2d 171, 180 (Minn. 1996),
vacated, 522 U.S. 1011 (1997); In re Leon G., 26 P.3d 481 (Ariz. 2001), vacated, 122
S.Ct. 1535 (2002); Westerheide v. State, 767 So.2d 637, 652-53 (Fla. Dist. Ct. App.
2000), review granted, 786 So.2d 1192 (Fla. 2001); and In re Tittlebach, 754 N.E.2d 484
(Ill. App. 2001), as authority for their argument that a requirement of "highly likely" is
required in order to achieve consistency with the "beyond a reasonable doubt" evidentiary
standard. In In re Linehan, the Minnesota Supreme Court held that the due process clause
of the United States Constitution and the Minnesota Constitution required that future
harmful sexual conduct must be "highly likely" in order to commit a proposed patient
under the state's Sexually Dangerous Persons Act. See In re Linehan, 557 N.W.2d at 180. 
The court placed primary reliance on the case of Addington v. Texas, 441 U.S. 418, 433,
99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). See In re Linehan, 557 N.W.2d at 180. In
Addington, the United States Supreme Court stated that the "individual should not be asked
to share equally with society the risk of error when the possible injury to the individual is
significantly greater than any possible harm to the state[,]" and held that a burden of proof
in mental health commitments of clear and convincing evidence satisfies due process. 
Addington, 441 U.S. at 427, 432. Under the Act at issue here, the burden of proof --
beyond a reasonable doubt -- is higher than the burden of proof required in Addington. 
And we see nothing in Addington to lead to the Minnesota court's conclusion that the
finding of future dangerous conduct must be "highly likely," as opposed to "likely," in
order to meet due process requirements. None of the other cases cited by appellants
includes such a holding. The term "likely," as ordinarily defined, means "probable." 
Something that is probable is beyond a mere possibility or potential for harm. The
"beyond a reasonable doubt" burden of proof is not inconsistent with the element that must
be proven -- that the person suffers from a behavioral abnormality that makes the person
likely to engage in a predatory act of sexual violence. 

 Appellants urge that they may not be deprived of their liberty absent a showing of
substantial threat or imminent risk of future harm. In support of this suggestion, they rely
on the cases of Lodge v. State, 597 S.W.2d 773 (Tex. App.--San Antonio 1980), aff'd on
other grounds, 608 S.W.2d 910 (Tex. 1980); Taylor v. State, 671 S.W.2d 535 (Tex. App.--Houston [1st Dist.] 1983, no writ); and Broussard v. State, 827 S.W.2d 619 (Tex. App.--Corpus Christi 1992, no writ). Before we review these cases, we note the Act by its terms
does require proof of a behavioral abnormality, predisposing the person to commit a
sexually violent offense, to the extent that the person becomes a menace to the health and
safety of another person. § 841.002(2). As we have noted, by definition a menace is a
threat or imminent danger, and the menace described in the Act is substantial. In its own
terms, the Act satisfies any proof requirement of a substantial threat or imminent risk of
future harm. 

 In Lodge, the court reversed a judgment of commitment, because there was no
evidence the appellant was in need of hospitalization for her own welfare and protection
or the protection of others. Lodge, 597 S.W.2d at 779. Citing Moss v. State, 539 S.W.2d
936, 947-50 (Tex. Civ. App.--Dallas 1976, no writ), the Lodge court stated that the court
in Moss "held that a mentally ill person could not be deprived of his liberty without a
strong showing of a substantial threat of future harm founded on actual dangerous behavior
manifested by some overt threat or act in the recent past . . . ." Lodge, 597 S.W.2d at
778. Actually, the court in Moss held that when an application for temporary
hospitalization is opposed by the proposed patient, the order must be supported by the
recommendation of a physician and a showing of the factual information upon which the
recommendation was based. Moss, 539 S.W.2d at 951. Our review of Moss does not
reveal the holding for which it was cited in Lodge, nor can we find anywhere in Lodge
where the court expressly adopted the holding. 

 In Taylor, the court held that "a person may not be deprived of his liberty by a
temporary involuntary commitment unless there is a showing of a substantial threat of
future harm to himself or others." Taylor, 671 S.W.2d at 538. In making this
determination, the court relied on Lodge and Seekins v. State, 626 S.W.2d 97 (Tex. App.--Corpus Christi 1981, no writ). Taylor, 617 S.W.2d at 538. In Seekins, the court made
the same finding, relying on Lodge and Moss. See Seekins, 626 S.W.2d at 99. 

 In Broussard, the court held that "bare psychiatric expert opinion" of a "potential
danger" to others is insufficient to support a commitment, and that the State failed to
sustain its burden of presenting evidence of a recent overt act or a continuing pattern of
behavior that tended to confirm the likelihood of the deterioration of Broussard's ability
to function. Broussard, 827 S.W.2d at 622. The court did not state there could be no
commitment absent a showing of substantial threat or imminent risk of future harm.

 It appears that the cases supporting appellants' contention -- that there must be a
showing of substantial threat or imminent risk of future harm -- are based upon a
misreading of the opinion in Moss by the court in Lodge. The Act by its own terms
requires proof of danger sufficient to justify civil commitment. We decline to hold that
the Constitution requires any additional or different finding of substantial threat or
imminent risk of future harm. We overrule issue I.D.

Due Process and Equal Protection:


Notice



 Appellants urge in issue II.A. that the Act violates procedural due process because
it does not require notice of the steps being taken against the person prior to the filing of
the petition. Appellants cite Sarzen v. Gaughan, 489 F.2d 1076 (1st Cir. Mass. 1973). 
The court in that case held that due process required that an inmate receive notice with
respect to many early procedural steps. Id. at 1084. But here the process prior to the
filing of a petition is still an administrative screening process and not yet adversary in
nature. See generally State v. Madary, 133 N.W.2d 583, 590 (Neb. 1965); see also In re
Craft, 109 A.2d 853, 855 (N.H. 1954). We respectfully decline to follow Sarzen. We
hold due process does not mandate notice to the person sought to be committed of those
preliminary procedures that precede the petition's filing, the beginning of adversary
proceedings. See Madary, 133 N.W.2d at 590; In re Craft, 109 A.2d at 855.

 Appellants also argue that steps taken without notice prior to the initiation of formal
proceedings violate equal protection. But the purpose of the preliminary process prior to
the initiation of formal adversary proceedings under the Act is to determine which cases
should go forward to formal adversary proceedings and which should not. Unlike persons
subject to ordinary civil commitment, those possibly subject to commitment under the Act
are known to and in the custody of the State prior to the initiation of the formal adversary
proceedings. See Tex. Health & Safety Code Ann. § 841.021(a) (Vernon Supp. 2003). 
This difference constitutes a rational basis for screening procedures prior to formal
adversary proceedings under the Act, while no similar procedures are available with
respect to those subject to ordinary civil commitment. Appellants make no contention that
those subject to the Act do not receive the same notice as those subject to ordinary civil
commitment with respect to matters occurring after the initiation of formal adversary
proceedings. We conclude that the failure to give notice to those subject to the Act of
procedures that occur prior to the initiation of formal adversary proceedings does not
violate equal protection. We overrule issue II.A.

Right to Counsel:


Psychiatric Examination


Prior to Adversarial Judicial Proceedings


 

 Appellants assert in issue II.B. that the Act violates procedural due process because
it does not provide for a court-ordered examination with the right to counsel, as provided
to targets for commitment under the Texas Mental Health Code. Appellants refer to the
expert examination that occurs prior to the filing of a petition alleging that the person
sought to be committed is a sexually violent predator. 

 Generally, the right to counsel arises upon the initiation of adversary judicial
proceedings. See Michigan v. Jackson, 475 U.S. 625, 629 n.3, 106 S.Ct. 1404, 89
L.Ed.2d 631 (1986) (Sixth Amendment); Griffith v. State, 55 S.W.3d 598, 603-604 (Tex.
Crim. App. 2001). Relying on Ex parte Ullmann, 616 S.W.2d 278 (Tex. App.--San
Antonio 1981, writ. dism'd), appellants assert that a proposed patient has the right to
effective assistance of counsel at all significant stages of the commitment process. 
However, nothing in Ullmann suggests that the right attaches prior to the initiation of
formal adversary proceedings. The filing of the petition is the step that initiates adversarial
judicial proceedings. See Tex. Health & Safety Code Ann. §§ 841.041, 841.061.
(Vernon Supp. 2003). We hold that the lack of counsel prior to the initiation of adversary
judicial proceedings does not violate due process. 

 Appellants argue that the statute's failure to require that counsel be provided prior
to adversary judicial proceedings denies them their right to equal protection, because those
who are subject to ordinary mental health commitments are afforded counsel prior to an
examination. The purpose of the initial examination under the Act is to determine which
cases should go forward and which should not. These examinations prior to formal
adversary judicial proceedings are possible because those subject to the Act are
incarcerated in the Texas Department of Criminal Justice ("TDCJ"), or committed to the
Texas Department of Mental Health and Mental Retardation ("MHMR") at the time of the
examination. Tex. Health & Safety Code Ann. § 841.023) (Vernon Supp. 2003). The
examination saves the State the expense of formal proceedings against those an
examination shows are not proper subjects for proceedings, while also protecting the
incarcerated individual who is found not to be a proper subject of formal adversary
proceedings. On the other hand, similar examinations are not practical in ordinary
commitment proceedings because the proposed patient is not ordinarily or necessarily in
custody before the initiation of formal adversary proceedings. A rational basis exists for
the distinction between the two statutes; the distinction is rationally related to a legitimate
governmental purpose. 

 Relying on Lanett v. State, 750 S.W.2d 302 (Tex. App.--Dallas 1988, writ denied),
appellants also urge they must be informed of their right to counsel prior to submitting to
a psychiatric examination. In Lanett, the psychiatric examination was held subsequent to
the initiation of adversary proceedings, whereas the examination complained of by
appellants is held prior to the initiation of adversary proceedings. Id. at 305-06. We
overrule issue II.B.


Due Process and Separation of Powers:


Multidisciplinary Team



 Appellants argue in issue II.C. that section 841.022 violates due process and the
separation of powers doctrine because it allows the Team, an interested and non-independent body, to usurp the function of the court by recommending the assessment of
a person targeted for commitment. Section 841.022 of the Act establishes a Team that
evaluates those whom the TDCJ or the MJMR has indicated are serving sentences for a
sexually violent offense or are committed after being found not guilty by reason of insanity
of such an offense and who may be repeat sexually violent offenders. See Tex. Health
& Safety Code Ann. §§ 841.021(a), (b), 841.022 (Vernon Supp. 2003). The Team is
to (1) determine whether the person is a repeat sexually violent offender and whether the
person is likely to commit a sexually violent offense after release or discharge, (2) give
notice to either TDCJ or MHMR, as appropriate, and (3) as appropriate, recommend the
assessment of the person for a behavioral abnormality. See § 841.022. The Team is
composed of two persons from MHMR, three persons from TDCJ (including one who
must be from the victim services office of that department), one person from the Texas
Department of Public Safety, and one person from the Interagency Council on Sex
Offender Treatment. Tex. Health & Safety Code Ann. §§ 841.007, 841.022(a)(1)-(4)
(Vernon Supp. 2003). After the Team has made a recommendation to either of the two
departments, that department -- using an expert to examine the person -- is to determine
whether the person suffers from a behavioral abnormality that makes the person likely to
engage in a predatory act of sexual violence. See § 841.023(a). 

 Appellants maintain that the Team's recommendation of persons for assessment is
a crucial step in the process toward commitment. They argue that such an assessment
should take place under the supervision and control of a court. They note that the pre-commitment examination in the ordinary mental health context takes place under a court's
supervision and pursuant to court order. We interpret this portion of their argument as
suggesting that the Act violates the right to due process and violates the separation of
powers clause of the Texas Constitution by providing for an examination conducted by
either the TDCJ or the MHMR prior to the initiation of formal adversarial proceedings. 
But we conclude that the initial assessment of who would be possible candidates for
commitment under the Act is an administrative screening function, not a judicial function,
and the fact that the assessment is conducted by one of the two departments, based in part
upon an examination conducted pursuant to the Act, does not violate due process. If an
adversary proceeding is actually filed, the statute provides a full array of due process
protections. 

 Appellants suggest that agency Team members would have an "interest" in
commitment of persons under the Act in order to create jobs and receive government
funding for their agencies. Appellants cite no evidence or authority for this argument, or
for the implication that members of the Team would fail to make a proper 

screening assessment because they are government employees. We overrule issue II.C. 

Due Process:


Multidisciplinary Team Standard


For Assessment Recommendation



 Appellants assert in issue II.D. that section 841.022(c)(1) of the Act violates due
process because it permits a Team recommendation for assessment under a standard that
is broader than the standard for commitment under the Act. See Tex. Health & Safety
Code Ann. §§ 841.003, 841.022(c)(1), 840.023(a), 841.062(a) (Vernon Supp. 2003). 
Under the statutory procedure, TDCJ or MHMR gives notice to the Team of those persons
(1) who are serving a sentence for a sexually violent offense, or of those who have been
committed to MHMR after being adjudicated not guilty by reason of insanity of a sexually
violent offense, and (2) who may be repeat sexually violent offenders. See § 841.021
(a),(b). The notice, among other things, is to include the assessment of the likelihood that
the person will commit a sexually violent offense after release or discharge. See §
841.021(c). Thereafter, the Team determines whether the person is a repeat sexually
violent offender and whether the person is likely to commit a sexually violent offense after
release or discharge; gives notice of that determination to TDCJ or MHMR, as
appropriate; and recommends the assessment of the person for a behavioral abnormality,
as appropriate. See § 841.022(c). The assessment to be made is whether the person
suffers from a behavioral abnormality that, by affecting a person's emotional or volitional
capacity, predisposes the person to commit a sexually violent offense, to the extent that the
person becomes a menace to the health and safety of another person. §§ 841.002(2),
841.022(c). 

 Appellants say this assessment is broader than the definitions of "sexually violent
predator" and "predatory act" would allow. Appellants point out that those whose sexual
violence is likely to be directed only toward family members, or others who do not fit
within the definition of a "predatory act," do not appear subject to commitment under the
express terms of the Act. The Act defines a "predatory act" as an act committed for the
purpose of victimization that is directed toward a stranger, a person of casual acquaintance
with whom no substantial relationship exists, or a person with whom a relationship has
been established or promoted for the purpose of victimization. See § 841.002(5). Under
the statutory scheme, the Team determines whether to recommend for assessment for
behavioral abnormality those repeat sexual offenders who are likely to commit a sexually
violent offense after release or discharge. See §§ 841.003(b), 841.022(c). Either the
TDCJ or MHMR, whichever is appropriate, then determines, with the assistance of an
expert, whether the person suffers from a behavioral abnormality that makes the person
likely to engage in a predatory act of sexual violence. See § 841.023. 

 We agree with appellants' assumption that some of those who are initially chosen
for assessment possibly may not be subject to commitment under the Act because the
assessment will determine they are not likely to engage in an act of predatory sexual
violence, as defined in the Act. But that is the main function of the procedure -- to
determine who is subject to commitment proceedings. We see nothing about this screening
procedure -- the purpose of which is to determine who might be subject to commitment and
who is not -- that violates due process. Other than pointing out that the initial group of
those recommended for assessment is broader than those subsequently determined to be
subject to commitment under the terms of the Act, appellants present no argument as to
why this violates due process, nor do they present any authority in support of their
contention. We overrule issue II.D.

Due Process and Equal Protection:


Use of Expert Testimony



 Appellants assert in issue II.E. that section 841.023(a) of the Act violates due
process and equal protection because it allows for the use of pre-Act testing in making a
clinical assessment and does not require that an expert's clinical assessment be based upon
recent testing. The section to which appellants refer requires TDCJ or MHMR to
determine, after receiving a recommendation for assessment from the Team, whether the
person suffers from a behavioral abnormality that makes the person likely to engage in a
predatory act of sexual violence. See § 841.023(a). The assessing department (either
TDCJ or MHMR) uses an expert to examine the person and make a clinical assessment
based upon testing for psychopathy, a clinical interview, and other appropriate assessments
and techniques. Id. Appellants argue that this section violates due process because it
allows for the use of pre-Act testing in making the clinical assessment -- testing that
appellants claim was conducted in violation of their due process right to notice. Due
process does not require an impossibility -- namely, the giving of notice of something not
in existence. Pre-Act testing may be used as data in the adversary proceeding, or as part
of the screening mechanism, without violating due process. 

 Appellants also argue that section 841.023(a) violates equal protection because
persons subject to commitment under the Act are denied the right to a psychiatric
examination that is conducted near the time of their commitment hearing; they note that
section 574.009 of the Texas Health and Safety Code requires that an examination must
have occurred within thirty days preceding the hearing. Section 574.009 relates to
certificates of medical examination that must be on file before a hearing may be held in an
ordinary commitment proceeding. Tex. Health & Safety Code Ann. § 574.009(a)
(Vernon Supp. 2003). This section requires that physicians filing such certificates must
have examined the proposed patient within thirty days. Id. As we read the statute,
however, it does not appear to require that those physicians must have examined the
proposed patient within thirty days of the hearing; rather it appears to require that they
have examined the proposed patient within thirty days preceding the execution of the
certificates. 

 Nevertheless, appellants fail to note that section 841.061 of the Act provides that
a trial must be held not later than sixty days after a petition is filed alleging that the person
is a sexually violent predator. See § 841.061. The Act provides that after the filing of the
petition the person and the State are entitled to an immediate examination of the person by
an expert. Id. Appellants are not denied the right to an expert examination conducted near
the time of their commitment hearing; the Act expressly provides that right. The
appellants present no authority in support of their argument. We overrule issue II.E.

Open Meetings Act


 Appellants contend in issue II.F. that the Team's meetings are in violation of the
Texas Open Meetings Act. The Open Meetings Act is applicable if the following five
prerequisites are met:


 the body must be an entity within the executive or legislative
department of the state;
 the entity must be under the control of one or more elected or
appointed members;



 the meeting must involve formal action or deliberation between a
quorum of members;
 the discussion or action must involve public business or public policy;
and
 the entity must have supervision or control over that public business
or policy.


 

Gulf Reg'l Educ. Television Affiliates v. Univ. of Houston, 746 S.W.2d 803, 809-10 (Tex.
App.--Houston [14th Dist.] 1988, writ denied); see also Tex. Gov't Code Ann. §§
551.001(4), 551.002 (Vernon 1994 & Supp. 2003). 

 The Team is subject to or controlled by a subsequent assessment made by the
custodial agency, and this assessment is subject to or controlled by the discretion of the
attorney for the State who decides whether to file suit to seek civil commitment. See Tex.
Health & Safety Code Ann. §§ 841.022, 841.023, 841.041 (Vernon Supp. 2003). A
review of the statute reveals the Team's role is that of a screening mechanism, not a final
arbiter of whether the person is a sexually violent predator. See §§ 841.022, 841.023. 
After receiving the Team's "determination" as to whether the person is likely to commit
a sexually violent offense after release or discharge and its recommendation regarding the
"assessment" of the person for a behavioral abnormality, TDCJ or MHMR then makes an
independent assessment. See § 841.023. The determination to be made is whether the
person suffers from a behavioral abnormality that makes the person likely to engage in a
predatory act of sexual violence. Id. If the department concludes the person suffers from
this abnormality, the department gives notice of that determination to the attorney
representing the State. Id. The State's attorney is then free to make a determination as
to which of the referrals will be taken to court for commitment proceedings. See §
841.041. The procedural steps outlined by the statute illustrate the Team's lack of ultimate
supervision or control over public business or policy. 

 Appellants contend that, absent a recommendation from the Team, neither TDCJ
nor MHMR is free to make a "determination." See §§ 841.022, 841.023. Even so, the
Team's screening review of confidential records is not the type of supervision or control
over public business or policy intended to be governed by the Open Meetings Act. 
Essentially, the function of the Team is to review records concerning the person and make
an initial screening recommendation. See § 841.022. The statute implicitly recognizes that
some of the records will be confidential by requiring any entity that possesses relevant
records to release the information for review "to an entity charged with making a
determination under this chapter," "regardless of whether the information is otherwise
confidential." See Tex. Health & Safety Code Ann. § 841.142(a),(e) (Vernon Supp.
2003). Consent of the person is not required for the release. See § 841.142(e). Though
confidential information is released to and exchanged among appropriate entities, nothing
in the statute suggests that the confidential information is to lose its confidential status
simply because the records are under review by the Team. Undeniably, the statute
facilitates the Team's screening and review of confidential records, but it does not abrogate
the records' confidential status or alter the Team's function of preliminary screening and
review. See generally § 841.142. Subjecting the Team to the Open Meetings Act
requirements would conflict with the Team's screening function of reviewing potentially
confidential records and recommending further assessment of cases for litigation. 

 Because the Team does not have ultimate supervision or control over the
determination of whether to file a petition, and because its function does not fall within the
confines of public business and policy, we hold the Team's meetings are not in violation
of the Open Meetings Act. Issue II.F. is overruled.

Nature of Proceeding


 Appellants urge in issue III that the Act is punitive rather than civil, and therefore
unconstitutional, because it does not afford procedural due process rights, including the
Fifth Amendment privilege against self-incrimination and the Sixth Amendment right to
counsel, and because it violates the prohibitions against double jeopardy and ex post facto
law. 

 The Texas legislature placed the Act in the Health & Safety Code and labeled it as
a civil commitment procedure. See § 841.001. While a civil label is not always
determinative of the issue, we will reject the legislature's manifest intent only where a
party challenging the statute provides the clearest proof that the statutory scheme is so
punitive either in purpose or effect as to negate the State's intention to deem it civil. 
Hendricks, 521 U.S. at 361. In determining whether a statute is punitive, factors that may
be considered include whether the sanction involves an affirmative disability or restraint;
whether it has historically been regarded as punishment; whether it comes into play only
on a finding of scienter; whether its operation will promote the traditional aims of
punishment -- retribution and deterrence; whether the behavior to which it applies is
already a crime; whether an alternative purpose to which it may rationally be connected
is assignable for it; and whether it appears excessive in relation to the alternative purpose
assigned. Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69, 83 S.Ct. 554, 9 L.Ed.2d
644 (1963). 

 The Act imposes certain restraints upon those found to be sexually violent
predators, including outpatient treatment and other conditions similar to those imposed in
community supervision. Tex. Health & Safety Code Ann. §§ 841.082, 841.083
(Vernon Supp. 2003). However, such restraints in the context of involuntary civil
commitments have historically been treated as civil, not punitive. Hendricks, 521 U.S. at
363. Commitment under the Act involves no finding of scienter. It does not involve
retribution because it does not fix culpability for prior criminal conduct; rather, the Act
addresses what it describes as a "menace" -- a threat. Id. at 362. A person committed
under the Act has a behavioral abnormality, a congenital or acquired condition that, by
affecting the person's emotional or volitional capacity, predisposes the person to commit
a sexually violent offense. See §§ 841.002(2), 841.003(a); Hendricks, 521 U.S. at 362-63. The acts that lead the person to initially qualify for the status of "sexually violent
predator" are crimes. But the statutory scheme of the treatment and supervision -- for the
purpose of avoiding the menace posed by an untreated, unsupervised person with the
defined behavioral abnormality -- is not excessive in relation to that purpose. We conclude
that, on balance, these factors do not show by clearest proof the Act is punitive in nature. 

 Appellants also argue the Act is punitive because one may be committed without a
showing by the State of a "mental" condition. We have already discussed this contention. 
Although "behavioral abnormality" is not expressly labeled a "mental" condition, the Act's
definition of "behavioral abnormality" is virtually the same as the Kansas statute's
definition of "mental abnormality" upheld by the Supreme Court in Hendricks, 521 U.S.
346. 

 Appellants further argue the Act is punitive because it provides that a violation of
requirements of commitment is a third degree felony. See Tex. Health & Safety Code
Ann. § 841.085 (Vernon Supp. 2003). Appellants insist this provision promotes
retribution because a predator who is unable to control behavior is doomed to fail, and
there is no inpatient alternative. Further, they suggest that the State, by this provision,
achieves an underlying goal of permanent incarceration of the socially unacceptable sex
offender. But rather than promoting permanent incarceration of sex offenders, the Act on
its face maintains the offenders in the community while imposing on the persons certain
requirements to minimize -- for the benefit of both the offenders and the public -- the
opportunity for the offenders to commit new offenses after commitment. See Tex.
Health & Safety Code Ann. § 841.081 (Vernon Supp. 2003) (providing for outpatient
treatment, not inpatient treatment); see § 841.082. 

 Appellants have failed to present the clearest proof that the statutory scheme is
punitive in purpose or effect. Because we conclude the Act is civil and not punitive, we
reject appellants' Fifth Amendment, Sixth Amendment, double jeopardy and ex post facto
law arguments as presented here. We overrule issue III.

Due Process and Separation of Powers:

Criminal Penalty


 Appellants assert in issue IV.A. that (1) section 841.085 of the Act is
unconstitutionally vague and violates the separation of powers doctrine when read in
conjunction with section 841.082(9), and (2) that it violates due process because it
criminalizes failure to comply with outpatient treatment and supervision requirements
without regard to whether such failure is volitional or due to a mental condition. See Tex.
Health & Safety Code Ann. §§ 841.082(9), 841.085 (Vernon Supp. 2003). Appellants
assert that the provision authorizing a third degree felony punishment for a violation of a
commitment requirement violates the separation of powers provisions of the United States
and Texas Constitutions because a judge may impose any requirement the judge deems
necessary; therefore, appellants argue, the Act confers upon the judge the power to create
a third degree felony. 

 Appellants cite no authority indicating that the separation of powers doctrine,
derived from the United States Constitution and relating to the division of power among
the three branches of the federal government, has any application to division of powers
among the three departments of state government. We consider their argument to be under
the Texas Constitution. Article II, Section 1 of the Texas Constitution provides:

 The powers of the Government of the State of Texas shall be divided
into three distinct departments, each of which shall be confided to a separate
body of magistracy, to wit: Those which are Legislative to one; those which
are Executive to another; and those which are Judicial to another; and no
person, or collection of persons, being of one of these departments, shall
exercise any power properly attached to either of the others, except in the
instances herein expressly permitted. 


Tex. Const. art. II, § 1. The power to pass laws and to revise the criminal law of Texas
is vested in the legislature. Tex. Const. art. III, §§ 30, 43. 

 We conclude the legislature has not delegated its legislative power to create third
degree felonies to the trial courts. Rather, the legislature has authorized the trial courts
to order requirements necessary to ensure the compliance of the committed person with
treatment and supervision and to protect the community. See § 841.082. It is the
legislature that has determined that violations of any of the statutory requirements,
including those necessary requirements specified by the judge, are third degree felonies. 
See § 841.085. 

 The appellants contend that because judges would differ in the requirements they
might impose, the Act is unconstitutionally vague, uncertain, and indefinite; appellants cite
Sanders v. State Dep't of Pub. Welfare, 472 S.W.2d 179, 182 (Tex. App.--Corpus Christi
1971, writ dism'd w.o.j.). In Sanders, the court held that the use of the term "old," such
as in the term "old debt" in a welfare regulation, was vague, uncertain, and indefinite. 
The court noted that different employees of the State Welfare Department could interpret
the use of the term in different ways. Id. at 182. The court stated that "[i]f a regulation
is incomplete, vague, indefinite and uncertain and it forbids the doing of an act which is
so vague, that men of common intelligence must necessarily guess at its meaning and that
such men differ as to application, it violates the first essential of due process of law." Id. 
However, that different judges might establish different specific requirements does not
render those requirements necessarily vague after they are issued and subject to
compliance. 

 Appellants argue that the right of the trial court to establish requirements of
commitment as authorized by § 841.082(a)(9), when taken together with the criminal
penalty in § 841.085 for violating a requirement, renders those sections vague and
overbroad. We have concluded that the statutory requirement, to follow the court's
specific orders which are necessary to ensure compliance with treatment and supervision
and to protect the community, is not vague. As to the appellants' contention that the
sections are unconstitutionally overbroad, the appellants offer no argument nor any
authority in support of that contention. Consequently, nothing is presented for review with
respect to that contention. Tex. R. App. P. 38.1(h); Kunze, 996 S.W.2d at 423. 

 Appellants also contend, in two sentences under this issue, that the criminal penalty
provision of section 841.085 violates due process because it criminalizes failure to comply
with requirements for commitment on an outpatient basis without regard to whether the
failure to comply is the result of volitional conduct or of a mental condition that renders
one incapable of controlling conduct. Appellants fail to distinguish between the ability to
comply with specific commitment requirements and a predisposition to commit sexually
violent offenses. Appellants cite no authority for their argument other than McNeil v.
Director, Patuxent Inst., 407 U.S. 245, 92 S.Ct. 2083, 32 L.Ed.2d 719 (1972), where the
Court held that the State had no basis for holding McNeil in a mental hospital. He had
been held there for six years on the authority of an ex parte order for a psychiatric
interview to determine if he should be committed after he had completed serving an
underlying criminal sentence, which had expired. Id. 407 U.S. at 250-51. Our decision
is not inconsistent with that holding. We overrule issue IV.A. 


Fifth Amendment Privilege against Self Incrimination





 Appellants urge in issue IV.B. that sections 841.082(a)(8) and 841.083(a) of the Act
violate the Fifth Amendment privilege against self-incrimination. Section 841.082(a)(8)
establishes the requirement that the person committed notify the case manager within forty-eight hours of any change in status that affects proper treatment and supervision, including
a change in the person's physical health or job status and including any incarceration of
the person. See § 841.082(a)(8). Section 841.083(a) provides that a treatment plan for
a committed person may include the monitoring of the person with a polygraph or
plethysmograph. See § 841.083(a). Appellants suggest that any information reported to
the case manager or derived from the results of a polygraph or plethysmograph could be
used against the committed person in a subsequent criminal proceeding. 

 Nothing in either statute requires the giving of incriminating evidence in violation
of the person's rights under the Fifth Amendment of the United States Constitution. 
Inasmuch as the appellants' challenge to the Act with respect to this issue is that it is
facially unconstitutional, their challenge must fail. Should the provisions of the Act be
used to elicit incriminating information in violation of the person's Fifth Amendment
privilege against self incrimination, it would be necessary to contend that the Act is
unconstitutional as applied, not that the Act is facially unconstitutional. See generally Ex
parte Renfro, 999 S.W.2d 557, 561 (Tex. App.--Houston [14th Dist.] 1999, pet. ref'd) (the
mere requirement as a condition of community supervision that one take a polygraph
examination is insufficient to constitute an infringement of the privilege against self-incrimination). Issue IV.B. is overruled.

Due Process and Equal Protection:

Right to Hearing with Burden Of Proof on State


 In issue IV.C., appellants contend section 841.102 violates due process and equal
protection because it fails to provide for a periodic redetermination that places the burden
of proof upon the State. See Tex. Health & Safety Code Ann. § 841.102 (Vernon
Supp. 2003). In raising this constitutional challenge, appellants focus narrowly on the
single section and ignore the considerable substantive and procedural safeguards that
characterize the Act from the initial commitment onward. 

 The biennial review provided for in section 841.102 must be considered in the
context of the overall statutory scheme. The Act provides for initial screening and review
by a Team, referral of the Team's assessment to either TDCJ or MHMR for review and
assessment, and referral to the State's attorney for further review before a petition for
commitment is filed. In the commitment proceeding, the person is afforded an expert
examination, an attorney, and a jury trial at which the State has the burden of proving
beyond a reasonable doubt that the person is a sexually violent predator. See Tex.
Health & Safety Code Ann. §§ 841.005, 841.023(a), 841.061, 841.062 (Vernon Supp.
2003). A finding of sexually violent predator status means in part that the person has a
behavioral abnormality which predisposes the person to commit a sexually violent offense,
to the extent that the person is a menace to the health and safety of another person. See
§§ 841.002(2), 841.003(a). 

 Once the person is determined by a judge or jury to have predator status, the person
is committed for outpatient treatment and supervision. See Tex. Health & Safety Code
Ann. § 841.081 (Vernon Supp. 2003). The person's outpatient commitment continues
until the person's behavioral abnormality has changed to the extent that the person is no
longer likely to engage in a predatory act of sexual violence. Id. The Act provides for
mandatory periodic review of the person's status. See Tex. health Safety Code Ann.
§§ 841.101, 841.102 (Vernon Supp. 2003). An expert contracted for by the State
performs a biennial examination on the person. § 841.101. A case manager provides a
report of the biennial examination to the judge. § 841.101(b). The report must include
an assessment of whether the requirements imposed on the person under Chapter 841
should be modified and whether the person should be released from all requirements. Id. 
Following the biennial examination, the judge must conduct a biennial review of the
person's status. § 841.102(a). At the biennial review, the person is entitled to be
represented by counsel, though the person is not entitled to be present. § 841.102(b). If
the judge determines at the review that (1) a requirement imposed on the person under
Chapter 841 should be modified, or (2) probable cause exists to believe that the person's
behavioral abnormality has changed to the extent the person is no longer likely to engage
in a predatory act of sexual violence, then the judge must set a hearing. § 841.102(c). 
During the hearing process, the person is entitled to representation by counsel, examination
by an expert, and a jury trial. See Tex. Health & Safety Code Ann. §§ 841.102;
841.103 (Vernon Supp. 2003). At the trial, the State has the burden to prove beyond a
reasonable doubt that the person's behavioral abnormality has not changed to the extent
that the person is no longer likely to engage in a predatory act of sexual violence. §
841.103(c). 

 In addition to the biennial review, the Act provides that the case manager must
annually give the person written notice of the person's right to file with the court, even
without the case manager's authorization, a petition for release. See Tex. Health &
Safety Code Ann. §§ 841.122 (Vernon Supp. 2003). A person may file a petition for
release at any time. See Tex. Health & Safety Code Ann. § 841.006 (Vernon Supp.
2003). However, various restrictions are placed upon that right, including, among others,
automatic denial of the petition should the trial judge determine it is frivolous. See Tex.
Health & Safety Code Ann § 841.123 (Vernon Supp. 2003). The judge is required to
deny an unauthorized petition unless the judge finds that probable cause exists that the
petitioner's behavioral abnormality has changed to the extent that the person is not likely
to engage in a predatory act of sexual violence. § 841.123(d). If the judge does not deny
the petition, the person is entitled to a jury trial with the burden of proof on the State and
the other protections described in the statute. § 841.124.

 We turn first to appellant's procedural due process challenge to the biennial review
provision. A procedural due process analysis proceeds in two steps. First, a liberty or
property interest must be involved. Mathews v. Eldridge, 424 U.S. 319, 332, 96 S.Ct.
893, 47 L.Ed.2d 18 (1976). The civil commitment of a person as a sexual predator is a
significant deprivation of liberty to which procedural due process protections apply. Vitek
v. Jones, 445 U.S. 480, 491-92, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980). The second step
involves the consideration of whether the utilized procedures satisfy due process. The
analysis involves balancing (1) the private interest affected; (2) the risk of an erroneous
deprivation of that interest and the probable value, if any, of additional or substitute
procedural safeguards; and (3) the government's interest, including the function involved
and the burdens that additional procedural requirements would place on the State. 
Mathews, 424 U.S. at 335.

 Although a person's interest in being free from confinement is substantial and the
harm the person would suffer from an erroneous determination is great, those interests are
adequately protected by the procedures afforded in the statute. The person has been found
beyond a reasonable doubt to be a sexually violent predator in a trial by jury (if the person
chooses to have a jury) with all its inherent procedural protections. See §§ 841.061,
841.062. The biennial examination is done by an expert contracted for by the State, and
a report on the examination is submitted to the judge. § 841.101. The person is entitled
to be represented by counsel at the biennial review and may have his or her own expert. 
See Tex. health & Safety Code Ann. §§ 841.102, 841.103, 841.144, 841.145 (Vernon
Supp. 2003). In making the probable cause determination, the trial judge has access to the
report and the person's counsel. The Supreme Court has said often that "due process is
flexible and calls for such procedural protections as the particular situation demands." See
Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed 2d 484 (1972). The
procedures in the biennial review are adequate to protect the person's liberty interests; and
the government's interest in protecting the public from sexually violent predators is
significant. See generally United States v. Wattleton, 296 F.3d 1184 (11th Cir.
2002)(placing burden of proof to show change of condition on defendant insanity acquittee
not a denial of due process). 

 Appellants' substantive due process challenge also fails. Substantive due process
bars certain arbitrary, wrongful government actions regardless of the fairness of the
procedures used to implement them. Foucha v. Louisiana, 504 U.S. 71, 80, 112 S.Ct.
1780, 118 L.Ed.2d 437 (1992). But it is not arbitrary or wrongful and not a substantive
due process violation to commit a person who is found to be a sexually violent predator. 
See generally Hendricks, 521 U.S. at 356-57. 

 Appellants also challenge section 841.102 on equal protection grounds. See U.S.
Const. amend. XIV. They point out that under Chapter 574 of the Texas Mental Health
Code a person found to be mentally ill and requiring court-ordered extended mental health
services must be afforded an annual judicial hearing, with a jury trial if requested, to
determine if a person continues to meet the Mental Health Code's criteria for commitment. 
See Tex. Health & Safety Code Ann. §§ 574.035(a), (b)(2), 574.066(e) (Vernon 1992
& Supp. 2003). At the renewal hearing under the Mental Health Code, the State has the
burden to prove each element of the applicable criteria by clear and convincing evidence. 
See Tex. Health & Safety Code Ann. § 574.031(g) (Vernon Supp. 2003).

 In contrast, the trial judge at the biennial review hearing under the Act is 
authorized to set a hearing only if the judge finds (i) there should be a modification in the
requirements imposed on the person or (ii) probable cause exists to believe the person's
behavioral abnormality has changed to the extent that the person is no longer likely to
engage in a predatory act of sexual violence. § 841.102. If a hearing is set to determine
the issue of release, then the State has the burden to prove beyond a reasonable doubt, to
a jury if requested, the commitment criteria continues. § 841.103. Appellants argue the
Act's failure to allocate the burden of proof to the State in the probable cause biennial
review constitutes an equal protection violation. 

 Appellants direct us to two Supreme Court cases -- Baxstrom, 383 U.S. 107 and
Humphrey v. Cady, 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972). Neither case
is directly applicable here. In Baxstrom, the Court held that the State of New York
violated a committed person's right to equal protection when it afforded a person civilly
committed the right to a jury determination as to his sanity, while denying such right to a
person committed at the expiration of a prison term. Baxstrom, 383 U.S. at 110-12. In
Baxstrom, the defendant was civilly committed at the expiration of his penal sentence
without a jury review. Humphrey also involved a defendant who had been convicted and,
in lieu of sentence, was committed to the sexual deviate facility for a period equal to the
maximum sentence authorized for the crime -- in his case one year. After the end of that
term, under the Wisconsin statutory scheme, the department could petition for a renewal
of the commitment. Relying on Baxstrom, the Court in Humphrey held that the State's
accordance of the right of a jury trial to those under ordinary civil commitment, but the
denial of a jury trial to those involved in renewal proceedings under Wisconsin's Sex
Crimes Act, violated the right of equal protection of those committed under the provisions
of the Sex Crimes Act. Humphrey, 405 U.S. at 510-12. But a sexually violent predator
under the Texas statute is not similarly situated to either Baxstrom or Humphrey. Whereas
at the end of their terms those defendants were not accorded a jury trial in a civil
commitment proceeding, Texas defendants are accorded such a right under the Act. 

 In an equal protection analysis, we must first decide whether the statutory scheme
interferes with a fundamental right or discriminates against a suspect class. See Kadrmas,
487 U.S. at 458. See In re M.A.H., 20 S.W.3d at 866. The statute does not discriminate
against a suspect class. We have held the Texas Act satisfies constitutional due process
concerns, and no fundamental liberty right is abridged without due process. Under these
circumstances, to satisfy equal protection the provision must be rationally related to a
legitimate governmental purpose. See, e.g., Kadrmas, 487 U.S. at 457-58. We conclude
the disparate treatment of sexually violent predators under the Act and persons under the
Texas Mental Health Code does not violate equal protection. 

 The legislature stated the rationale behind the enactment of Chapter 841 in the first
section of the Act, which we quote at the beginning of this opinion. Section 841.001
expressly states why the involuntary commitment provisions of the Texas Mental Health
Code are unworkable for sexually violent predators. The Supreme Court has observed
more than once that when the legislature acts in areas of medical or scientific uncertainty,
courts must be cautious not to rewrite legislation. See Jones v. United States, 463 U.S.
354, 370, 103 S.Ct. 3043, 77 L.Ed 2d 694 (1983). Further, those attacking the rationality
of a legislative classification have the burden to negate every conceivable basis which
might support it. See FCC v. Beach Communications, Inc., 508 U.S. 307, 315, 113 S.Ct.
2096, 124 L.Ed.2d 211 (1993). Though appellants have voiced an equal protection
challenge, they have not attacked the bases set out by the legislature in the statute, or any
other conceivable bases. They do not allege that sexually violent predators are a suspect
class, subject to heightened scrutiny, or allege, if such persons are not a suspect class, why
section 841.102 does not meet the rational basis test. Appellants have not met their burden
to show a denial of equal protection under the law. 

 Nonetheless, we find the bases, as stated, to be adequate to survive an equal
protection challenge. Under the Act, commitment is indefinite in length. Release because
of a change of condition claimed upon biennial review or as the result of an unauthorized
petition initially is reasonably restricted by the statutory requirement that probable cause
must exist for a redetermination of the condition. See Tex. Health & Safety Code
Ann. §§ 841.102, 841.121, 841.123 (Vernon Supp. 2003). A petition that is groundless
on its face does not require a redetermination. § 841.123. Were we to hold otherwise,
we would be requiring continuous repetitive trials of conditions already determined and
unchanged. Given the legislative findings that (a) predators have a behavioral abnormality
not amenable to traditional mental illness treatment and a need for long term supervision
and treatment, (b) the involuntary commitment provisions under the Texas Mental Health
Code are inadequate to address the risk of sexual predators to society, and (c) there are
differences in effective supervision and treatment between the two classifications, we find
the differences in the statutory schemes are rationally related to a legitimate government
purpose. 

 At different points in the commitment process, as illustrated above, Chapter 841
provides a person considerable protection, including counsel, experts, jury trial, judicial
review, and treatment. See Tex. Health & Safety Code Ann. §§ 841.005, 841.006,
841.023, 841.061, 841.083, 841.101-02, 841.121-24, 841.144, 841.145, 841.146 (Vernon
Supp. 2003). We hold that the statutory requirement that at the biennial review the judge
must make a probable cause finding before the person is entitled to a hearing (where the
statute expressly places the burden of proof on the State) is not a denial of equal protection
or due process. Issue IV.C. is overruled. 

 The judgment of the trial court is AFFIRMED.

 _________________________________

 DAVID B. GAULTNEY

 Justice


Submitted on August 22, 2002

Opinion Delivered December 19, 2002

Publish


Before Walker, C.J., Burgess and Gaultney, JJ.


DISSENTING OPINION


 I respectfully dissent in several aspects, most vigorously to that portion which
upholds the criminal penalties. I concur in all other aspects.

DUE PROCESS AND SEPARATION OF POWERS:


CRIMINAL PENALTY


 Appellants assert in issue IV.A. that section 841.085 of the Act (2), when read in
conjunction with section 841.082(a) (3), violates the separation of powers doctrine and is
unconstitutionally vague. As part of their argument, they assert the provision authorizing
a third degree felony offense for a violation of a commitment requirement violates the
separation of powers provisions of the Texas Constitution because, since a judge may
impose any requirement deemed necessary, it confers upon the judge the power to create
a third degree felony. 

 The majority acknowledges that Article II, Section 1 of the Texas Constitution
provides for three distinct and separate branches of government and Art. III, §§ 30, 43
vest the power to pass laws and to revise the criminal law of the State in the legislature. 
The majority concludes the legislature has not delegated its power to the trial courts to
create third degree felonies, but rather has authorized the trial courts to determine
requirements that are necessary to ensure the compliance of the person committed with
treatment and supervision and to protect the community. They further conclude it is the
legislature, not the judge, that has determined that any of the statutory requirements, as
well as those necessary requirements set by the judge, are third degree felonies. They miss
the point.

 To better illustrate the issue, this is the statute, as combined: A person commits a
felony of the third degree if the person violates the legislative requirements imposed under
Section 841.082(a)(1-8) or any other requirement determined necessary by the judge under
Section 841.082(a)(9). That the legislature determined eight specific requirements should
be imposed on persons committed under the Act is a clear indication of its legislative
prerogative, duty and power to prescribe what requirements or violations thereof would
be criminalized. However, the legislature crossed the constitutional line when it
criminalized "any other requirements determined necessary by the judge." This is simply
a delegation of its authority to expand the eight enumerated requirements. As a rose is still
a rose by any other name, section 841.082(a)(9) is a delegation of authority by any
analysis. Therefore, I am constrained to conclude that section 841.082(a)(9) of the Act
is unconstitutional under the separation of powers provision of the Texas Constitution
because it involves the unconstitutional delegation of legislative power to the judiciary. 

 Appellants also contend the combination of sections 841.085 and 841.082(a)(9) is
unconstitutionally void for vagueness and overbroad. The majority, in its analysis, states: 
"[T]hat different judges might establish different specific requirements does not render
those requirements necessarily vague after they are issued and subject to compliance." 
Again, the majority misses the point. Appellants do not argue that a particular requirement
imposed by a judge under 841.082(a)(9) (4) is unconstitutionally vague; rather they argue the
statute, as written, is unconstitutionally vague because it criminalizes unknown conduct on
its face. A statute is unconstitutionally vague if it (1) does not give fair notice of what
conduct may be punished, and (2) invites arbitrary and discriminatory enforcement by its
lack of guidance for those charged with its enforcement. Rooms With a View, Inc. v. Private
Nat. Mortg. Ass'n, Inc., 7 S.W.3d 840, 845 (Tex. App.--Austin 1999, pet. denied) (citing
Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498, 102 S.Ct. 1186, 71
L.Ed.2d 362 (1982)). Clearly, it would be unconstitutional for the Legislature to pass a
statute stating: "A person commits a felony of the third degree if the person violates any 
requirement determined necessary by the legislature." Just as clearly, the Legislature can
not criminalize conduct that is defined only as "any other requirements determined
necessary by the judge" because this does not give fair notice of what conduct may be
punished. Accordingly, I would hold section 841.082(a)(9) is unconstitutional under the
void for vagueness doctrine.

 The majority does not address the overbreath issue. Having decided the vagueness
issue in favor of appellants, the overbreath issue would grant no additional relief, so it is
unnecessary for me to consider. (5) I would sustain issue IV.A.

OPEN MEETINGS ACT

 The appellants contend in issue II.F. that the multidisciplinary team's meetings are
in violation of the Texas Open Meetings Act. The majority correctly recites the five
prerequisites of The Texas Open Meetings Act citing Gulf Reg'l Educ. Television Affiliates
v. Univ. of Houston, 746 S.W.2d 803, 809-10 (Tex. App.--Houston [14th Dist.] 1988, writ
denied).

 Under the record, it is clear to me that the multidisciplinary team is an entity within
the executive department of the State; it is under the control of one or more appointed
members; its meetings involve formal action or deliberation between a quorum of
members; its discussion or actions involve public business; and it has supervision or
control over that public business. Consequently, the multidisciplinary team is subject to
the Texas Open Meetings Act.

 The majority concludes the multidisciplinary team "is subject to or controlled by a
subsequent assessment made by the custodial agency, and this assessment is subject to or
controlled by the discretion of the attorney for the State who decides whether to file suit
to seek civil commitment." It is true that the Texas Department of Criminal Justice or the
Texas Department of Mental Health and Mental Retardation, after receiving from the
multidisciplinary team its determination as to whether the person is likely to commit a
sexually violent offense after release or discharge and its recommendation as to assessment
of the person for a behavioral abnormality, makes an independent determination as to
whether the person suffers from a behavioral abnormality that makes the person likely to
engage in a predatory act of sexual violence before referring the person to the State's
attorney. Tex. Health & Safety Code Ann. § 841.023. It is also true that the State's
attorney is then free to make his or her own determination as to which of those referred
persons will be taken to court for commitment proceedings. Id. § 841.041. However, it
also appears that neither the Texas Department of Criminal Justice nor the Texas
Department of Mental Health and Mental Retardation is free to make a determination as
to whether the person suffers from a behavioral abnormality that makes the person likely
to engage in a predatory act of sexual violence absent a recommendation from the
multidisciplinary team that the person be assessed. Id. § 841.023. Consequently, while
the two departments have the ultimate determination as to who, among those whom the
multidisciplinary team recommends for assessment, are persons who suffer from a
behavioral abnormality that makes the person likely to engage in a predatory act of sexual
violence, and while the State's attorney has discretion of which of those persons to seek
to commit, the multidisciplinary team's decisions not to recommend that a person be
assessed for a behavioral abnormality is not subject to or controlled either by the two
departments or by the State's attorney. I know of no provision that permits either of the
two departments to assess a person when such an assessment has not been recommended
by the multidisciplinary team, nor do I know of any provision that would permit the
attorney for the State to seek commitment under the Act when the multidisciplinary team
has not recommended assessment. 

 The trial court, in its findings of fact, expressed privacy concerns as a reason why
the multidisciplinary team should not be required to meet openly. I share those concerns. 
However, I cannot agree with the majority, that the multidisciplinary team does not fit
within the definition of those governmental bodies that fall within the requirements of the
Texas Open Meetings statute. I would sustain issue II.F.

DUE PROCESS AND EQUAL PROTECTION:


RIGHT TO HEARING WITH BURDEN OF PROOF ON STATE



 The appellants urge in issue IV.C. that § 841.102 of the Act violates due process
and equal protection because it does not provide for periodic redetermination that the
person continues to meet the standard for commitment, in a judicial hearing with the
burden of proof upon the State. The majority correctly sets out the procedures after
commitment.

 In Texas, those who are subject to ordinary civil commitments are entitled to a
hearing prior to an order for an extension of their commitment. Tex. Health & Safety
Code Ann. § 574.066(e) (Vernon 1992). An application for which a hearing is requested
or set is considered an original application for court-ordered extended mental health
services. Id. 

 At a hearing on an original application for court-ordered extended outpatient mental
health services, the proposed patient has the right to a jury and the State must establish
commitment criteria by clear and convincing evidence. Tex. Health & Safety Code
Ann. § 574.035(b)(2) (Vernon Supp. 2003). Renewal is for no more than twelve months. 
Tex. Health & Safety Code Ann. § 574.066(f) (Vernon 1992). As previously noted,
under the Act commitment is for an indefinite period. Tex. Health & Safety Code
Ann. § 841.081 (Vernon Supp. 2003). A person committed under the Act does not
receive a post-commitment hearing to determine if he or she still meets commitment
criteria unless: (1) the trial court, in a biennial review, finds that there is probable cause
to believe that the person's behavioral abnormality has changed to the extent that the
person is no longer likely to engage in a predatory act of sexual violence: (2) the case
manager determines that the person's behavioral abnormality has changed in the same way
and the person petitions for release; (3) the proposed patient files an unauthorized petition
for release that the judge does not find to be frivolous; or (4) the proposed patient files a
subsequent unauthorized petition for release and the judge chooses to set a hearing, where
there is probable cause to believe that the petitioner is no longer likely to engage in a
predatory act of sexual violence. Id. §§ 841.102(c)(2), 841.121(a)-(c), 841.123(c)-(d). 

 In summary, those who are under ordinary civil commitment are committed for a
specific period of time, and renewals are treated the same as new commitments. The
patient subject to possible renewal is entitled to a hearing, before a jury if desired, where
the State has the burden to establish commitment criteria by clear and convincing evidence. 
On the other hand, the person committed under the Act is committed, not for a set period,
but until the person no longer meets the commitment criteria. The person is not
automatically entitled to a hearing absent a finding by the judge that probable cause exists
that the person no longer meets the commitment criteria, or a finding by the case manager
that the person no longer meets the commitment criteria, or, in a first unauthorized petition
for release, the trial court does not find that his or her petition is frivolous. I also note that
a trial court, in any subsequent unauthorized petition for release, may deny the petition if
a previous petition was frivolous or if, after hearing, it was determined that the petitioner's
behavioral abnormality had not changed to the extent that the petitioner no longer met the
commitment criteria. Id. § 841.123(c). 

 The distinction made between the methods for determination of continuation or
renewal of commitment as between those committed in ordinary civil commitment
proceedings and those committed under the Act does not relate to the type of custodial or
medical care to be given to the two classes, but to the opportunity afforded to the person
committed to show whether the person is mentally ill at all. I conclude that the distinctions
between the two classes of persons committed have no relevance in this context. 
Therefore, I conclude, contrary to the majority, that the Act violates appellants' rights
under the Equal Protection Clause of the United States Constitution. 

 Appellee Molett suggests that the legislature has determined that those committed
under the Act are less amenable to traditional mental illness treatment modalities and that,
applying the equal protection rational basis test, the differences between the two
procedures are rationally related to the governmental interest to be furthered. The
apparent governmental purpose in the distinction between the two classes is to avoid the
cost and expense of full-scale hearings in those cases where there is no reasonable
indication that their propensity for committing violent sexual offenses has changed. Even
if one is to assume, as suggested by the legislature and the appellees, that those committed
under the Act are less amenable to traditional mental illness treatment modalities, neither
suggests that those committed under the Act are receiving traditional mental illness
treatment modalities. In fact, the treatment plan may include monitoring the person
committed under the Act with a polygraph or plethysmograph. Tex. Health & Safety
Code Ann. § 841.083(a) (Vernon Supp. 2003). These do not appear to be traditional
mental illness treatment modalities. Consequently, I see no rational basis for the
distinction between those subject to ordinary civil commitment and those subject to review
under the Act with respect to the procedure for determining whether they still meet the
criteria for commitment so as to justify their continued commitment. I would sustain issue
IV.C. 

REMEDY


 If issues IV.A, II.F. and IV.C. were sustained what is the appropriate remedy?
Having determined 841.082(a)(9) is unconstitutional under both the separation of powers
and the void for vagueness doctrines, the obvious remedy is to enjoin its use as a penal
statute.

 While the appellants framed their issue with reference to the unconstitutionality of
section 841.102 of the Act, their argument of necessity has required a consideration of the
effects of sections 841.101, 841.121, 841.122, and 841.123(c) and (d), all of which deal
with subsequent determinations as to whether the person committed still meets commitment
criteria. I would declare that section 841.123(c) and (d) are unconstitutional because they
provide that in certain circumstances those committed under the Act would not have an
annual hearing in which the State would have the burden of proof, whereas those
committed in an ordinary civil commitment would have such a hearing.

 Having determined those provisions of the Act to be unconstitutional, I must next
determine whether the remainder of the Act must fail as well. The Act contains no savings
or severability clause. While the absence of such a clause in a legislative act is an
important factor in determining the ultimate effect on the whole act of striking a part, that
factor alone is not necessarily controlling. Harris County Water Control & Improvement
Dist. No. 39 v. Albright, 153 Tex. 94, 98, 263 S.W.2d 944, 947 (1954). The remainder
of the Act fails only if it appears that this offending provision is not separable from the
remainder. Id. I would hold it severable unless it appears that the legislature would not
have enacted the section without the offending provision, or that the remainder does not
present an independent, complete and workable whole without it. Id. There is nothing in
the record that would indicate that the legislature would not have enacted the section
without the offending provision. Rather, the Act, without the offending provision,
addresses the concerns of the legislature found in section 841.001. Also, I find that the
remainder of the Act, without the offending provision, presents a complete and workable
whole. 

 Accordingly, I would reverse the judgment below and declare (1) that section
841.082(a)(9) is unconstitutional under both the separation of powers and the void for
vagueness doctrines and prohibit its use as a penal statute, (2) that section 841.123(c)-(d)
of the Texas Health & Safety Code is unconstitutional because it violates the appellants'
rights under the Equal Protection Clause of the United States Constitution, and, as a result,
a person committed under the Act who presents an unauthorized petition for release as
provided in section 841.122 of the Act is entitled to the hearing provided in section
841.124 of the Act. I would further declare that section 841.123(c)-(d) is severable from
the remainder of the Act, which remains in full force and effect. I would also declare that
the meetings of the multidisciplinary team are subject to the Texas Open Meetings Act. 
Since the issues relating to the need of or form of injunctive relief would best be
determined by the trial court, I would reverse the judgment and remand this cause for
further proceedings consistent with this opinion.




 DON BURGESS

 Justice


Dissent Delivered

December 19, 2002

Publish
1. Billy Johnson, Franklin Duane Walston, Marvin Wesley Hendon, Kendrick
Douglas, Carlos Cortez, Jeffrey Scott Quintana, Gerome Ellis Alexander, Del Ernest
Wolford, Ronnie Lee Dyer, Bennie Green, Bruce McCain, Anthony D'Angelo, Daniel
Craig Weeks and Jerry Reed. 
2. Tex. Health & Safety Code Ann. § 841.085. Criminal Penalty

 A person commits an offense if the person violates a requirement imposed under
Section 841.082. An offense under this section is a felony of the third degree
3. Tex. Health & Safety Code Ann. § 841.082. Commitment Requirements

 (a) Before entering an order directing a person's outpatient civil commitment, the
judge shall impose on the person requirements necessary to ensure the person's compliance
with treatment and supervision and to protect the community. The requirements shall
include:

 (1) requiring the person to reside in a particular location;

 (2) prohibiting the person's contact with a victim or potential victim of the person;

 (3) prohibiting the person's use of alcohol or a controlled substance;

 (4) requiring the person's participation in a specific course of treatment;

 (5) requiring the person to submit to tracking under a particular type of tracking
service and to any other appropriate supervision;

 (6) prohibiting the person from changing the person's residence without prior
authorization from the judge and from leaving the state without that authorization;

 (7) if determined appropriate by the judge, establishing a child safety zone in the
same manner as a child safety zone is established by a judge under Section 13B, Article
42.12, Code of Criminal Procedure, and requiring the person to comply with requirements
related to the safety zone;

 (8) requiring the person to notify the case manager within 48 hours of any change
in the person's status that affects proper treatment and supervision, including a change in
the person's physical health or job status and including any incarceration of the person; and

 (9) any other requirements determined necessary by the judge.
4. Appellants do not argue that any of the eight statutory imposed requirements are
unconstitutionally vague; therefore I do not include those in my analysis.
5. Certainly, a persuasive argument can be made under this constitutional concept
also.