CORTIÑAS, Judge.
The Jimmy Ryce Involuntary Civil Commitment of Sexually Violent Predators Act (“Jimmy Ryce Act”), sections 394.910-930, Florida Statutes (2004), passed by the legislature in 1998, was aimed at “a small but extremely dangerous number of sexually violent predators.” § 394.910, Fla. Stat. (2004). The legislature was concerned with the “likelihood of sexually violent predators engaging in repeat acts of predatory sexual violence” and created a “civil commitment procedure for the long-term care and treatment of sexually violent predators.” Id.
*1154 The Jimmy Ryce Act requires that the “agency with jurisdiction over a person who has been convicted of a sexually violent offense” provide written notice and certain information regarding the person to a multidisciplinary team before the person’s release from total confinement. See § 394.913, Fla. Stat. (2004). The multidisciplinary team must include two licensed psychiatrists or psychologists, or one licensed psychiatrist and one licensed psychologist.[1] Id. After receiving the information, the multidisciplinary team must provide to the state attorney a written assessment and recommendation as to whether the person meets the definition of a sexually violent predator. Id. After receiving the written assessment and recommendation from the multidisciplinary team, the state attorney has the discretion to file a petition for civil commitment with the circuit court alleging that the person is a sexually violent predator.[2] § 394.914, Fla. Stat. (2004).
The issue before this court is whether, under the Jimmy Ryce Act, a positive recommendation from the multidisciplinary team that a person meets the definition of a sexually violent predator constitutes a condition precedent to the filing of the petition for involuntary commitment by the state attorney. The defendant, James Harden, petitions for writs of prohibition, habeas corpus and, in the alternative, certiorari. Harden contends that his continued confinement contravenes the Jimmy Ryce Act and constitutes an unlawful deprivation of liberty.
The interpretation of a statute is a question of law subject to de novo review. Kephart v. Hadi, Nos. SC02-936, SC02-2280, 2006 WL 1548026, at *2, 932 So.2d 1086, 1089 (Fla. June 8, 2006) (citations omitted).
Harden was charged with a series of sexual battery offenses in 1972 and 1973. In 1975, he entered guilty pleas and was sentenced to concurrent fifty-year terms. In 2004, as Harden’s release date was approaching, the Department of Corrections referred him to a multidisciplinary team (“MDT”), which was established by the Department of Children and Families (“DCF”) pursuant to the Jimmy Ryce Act. The MDT, consisting of three licensed Florida psychologists, determined that Harden did not meet the criteria to be considered a sexually violent predator and recommended against the filing of a petition seeking Harden’s involuntary commitment. This determination was based, in part, on a psychiatrist’s, Dr. Amiel’s, clinical evaluation, which included a personal interview with the defendant. Dr. Amiel *1155 determined that Harden could not be considered a sexually violent predator.
Shortly thereafter, the State asked a second MDT to reconsider, and provided additional information to the MDT. After reviewing the additional information, the second MDT, also consisting of three licensed psychologists, one of whom was a member of the original MDT, procured another mental health evaluation. Accordingly, on September 20, 2005, another psychiatrist, Dr. Swan, conducted a clinical evaluation and determined that Harden met the criteria to be considered a sexually violent predator. However, on October 6, 2006, after reviewing the case, including the mental health evaluation reports of both Dr. Amiel and Dr. Swan and the new information submitted by the State, the second MDT concluded that Harden did not meet the criteria to be considered a sexually violent predator. Thus, two separate MDTs have determined and recommended that the defendant is not a sexually violent predator.
Notwithstanding these conclusions, the state attorney filed a petition seeking to have Harden civilly committed as a sexually violent predator. In support of its petition, the State Attorney attached the conflicting opinions and reports of Dr. Swan and Dr. Amiel, and the assessments of both MDTs.
On October 22, 2005, the trial court entered an ex-parte Order Determining Probable Cause and issued a Warrant For Custodial Detention pursuant to section 394.915, Florida Statutes (2004), transferring Harden to DCF at the conclusion of his incarcerative sentence and ordering him held in a secure facility.[3]
We review whether the trial court departed from the essential requirements of the law when it denied Harden’s motion to dismiss the State’s petition and motion for reconsideration of the ex-parte determination of probable cause. Combs v. State, 436 So.2d 93, 96 (Fla.1983). This court will not disturb the trial court’s findings unless there has been a violation of an established principle of law resulting in a miscarriage of justice. Id.
Harden contends that the state attorney may not file a petition for civil commitment when the MDT (1) finds that the person does not meet the statutory definition of a sexually violent predator, and (2) recommends against such a proceeding. Harden further contends that, since the filing of the petition was improper due to the MDTs’ conclusions, the trial court was not authorized to conduct a probable cause hearing. See 394.915, Fla. Stat. (2004).
Conversely, the State asserts that the MDT’s recommendation that the person meets the criteria to be considered a sexually violent predator is not a condition precedent to the filing of the petition for involuntary commitment. Additionally, the State asserts that, although a written assessment and recommendation from the MDT is required under section 394.914, Florida Statutes (2004), the term “recommendation” implies a non-binding advisory opinion. Under the State’s theory, even if the MDT recommends that the defendant does not meet the criteria to be considered *1156 a sexually violent predator and recommends against civil commitment, the State is nonetheless authorized to make the final determination as to whether a petition for civil commitment should be filed.
The State’s position appears to have been initially accepted by the Office of the Attorney General in Opinion 98-64. The Attorney General opined that a state attorney may file a petition for the involuntary commitment of persons scheduled to be released from prison independently of a recommendation from the MDT. Op. Att’y Gen. 98-64 (Oct. 21, 1998). However, just forty-one (41) days later, Attorney General Opinion 98-64 was changed and a new opinion was issued. Op. Att’y Gen. 98-73 (Dec. 1,1998).
In Opinion 98-73, the Attorney General recognized that, under section 916.34, Florida Statutes (1998), which is currently section 394.914:
A state attorney may not, under the Jimmy Ryce Involuntary Civil Commitment for Sexually Violent Predators Treatment and Care Act, file a petition for the involuntary commitment of persons scheduled to be released on or after January 1, 1999, independent of a recommendation from the multidisciplinary team.
Op. Att’y Gen. 98-73 (Dec. 1, 1998)(em-phasis added). Accordingly, the Attorney General’s Office expressly revised its previous opinion to reflect that, pursuant to the Jimmy Ryce Act, a state attorney may not file a petition for the involuntary commitment of persons scheduled to be released from prison independent of a recommendation from the MDT. The Attorney General noted that section 916.34 does not contain a jurisdictional disclaimer like other sections of the Jimmy Ryce Act, thereby authorizing the state attorney to act only after receiving the MDT’s recommendation and assessment. This latter Attorney General Opinion candidly admits that “nowhere in the [Jimmy Ryce Act] are there any procedures prescribed for the state attorney to proceed in the absence of a written assessment and recommendation of the multidisciplinary team.”
In the instant case, two MDTs found that Harden did not meet the criteria to be considered a sexually violent predator. We agree with the Attorney General’s opinion that there is nothing in the Jimmy Ryce Act which authorizes the state attorney to initiate commitment proceedings in the absence of a recommendation from the MDT that the individual is a sexually violent predator. Therefore, we find that the State exceeded its authority under the Jimmy Ryce Act when it filed a petition for Harden’s involuntary commitment in the absence of an MDT recommendation that Harden should be committed because he meets the definition of a sexually violent predator.
The Florida Supreme Court, in analyzing a different section of the Jimmy Ryce Act, expressed its agreement with the Fourth District Court of Appeal, which observed that the continued detention of an individual who has completed serving his full incarcerative sentence is significant enough to “ ‘warrant scrupulous compliance with the statute permitting such confinement, not to mention the applicable constitutional provisions.’ ” State v. Goode, 830 So.2d 817, 826 (Fla.2002) (quoting Johnson v. Dep’t of Children & Family Servs., 747 So.2d 402, 403 (Fla. 4th DCA 1999)). In the instant ease, since the defendant remains in custody after serving his sentence, we must determine whether “scrupulous compliance” with the Jimmy Ryce Act has been observed. When evaluating section 394.914 in conjunction with section 394.913, it becomes clear that Har *1157 den’s detention contravenes the plain meaning of those statutes.
When construing the language of a statute, courts are required to first consider the actual language of the statute. Woodham v. Blue, Cross & Blue Shield of Florida, Inc., 829 So.2d 891, 897 (Fla.2002); Campbell v. Kessler, 848 So.2d 369, 371 (Fla. 4th DCA 2003)(finding that a court must construe a statute according to the precise language used by the legislature). In interpreting a statute, we must give statutory language its plain and ordinary meaning. Green v. State, 604 So.2d 471, 473 (Fla.1992)(citing Southeastern Fisheries Ass’n, Inc. v. Dep’t of Natural Res., 453 So.2d 1351 (Fla.1984)). If the plain and ordinary meaning can be discerned from the language of the statute, courts need not examine legislative history. State v. Sousa, 903 So.2d 923, 928 (Fla.2005). Furthermore, the plain and ordinary meaning of a word can be gleaned from a dictionary. Green, 604 So.2d at 471.
Under numerous dictionary definitions, the word “recommendation” as used in section 394.914, is synonymous with advocacy, endorsement, blessing, and approval. Its antonyms include words such as rejection, disapproval, and veto. In giving section 394.914 its plain and ordinary meaning and construing it in conjunction with other sections of the Jimmy Ryce Act, we conclude that a written report recommending that a person is a sexually violent predator is required before the State can exercise its discretion to file a petition for civil commitment. Contrary to the State’s position, it seems obvious to us that in construing the word “recommendation,” we should not interpret it to mean its antonym. Therefore, we find that a positive recommendation from the multidisciplinary team that a person meets the criteria to be considered a sexually violent predator is a condition precedent to the filing of the petition for commitment by the state attorney.
Our interpretation of section 394.914 is consistent with the analyses in Tanguay v. State, 880 So.2d 533 (Fla.2004) and In re Commitment of Heath, 895 So.2d 1258 (Fla. 2d DCA 2005). The Florida Supreme Court, in reviewing the requirements and procedures of the Jimmy Ryce Act, has observed:
The Act provides a civil commitment procedure for the long term treatment of sexually violent predators. The Act was created so that a person classified as a sexually violent predator may be involuntarily committed to the DCF for treatment until the person’s mental abnormality or personality disorder has changed and the person is safe to be at large (internal citations omitted). Because of the constitutional implications related to involuntary commitment, the Legislature provided detailed procedural requirements that the State must follow to proceed under the Act.
Tanguay, 880 So.2d at 536. The court stated that, after the MDT receives notice that a person convicted of a sexually violent offense will be released from confinement, the MDT must “assess whether the person meets the definition of a sexually violent predator who should be subject to commitment and [] provide the state attorney with its written assessment and recommendation.” Id. (emphasis added). Thus, in considering the word “recommendation,” the Florida Supreme Court gave it a positive connotation, reasoning that the state attorney had the discretion to file a petition for commitment after receiving a positive assessment and recommendation from the MDT that the person is a sexually violent predator who should be subject to commitment. See id.
*1158 Furthermore, in Heath, the Second District Court of Appeal noted that the receipt of the MDT’s report, which found that Heath met the sexually violent predator criteria, authorized the state attorney to file a commitment petition. Heath, 895 So.2d at 1260 (citing State v. Ortega, 891 So.2d 623 (Fla. 2d DCA 2005)). Heath involved an MDT’s report in which four members of the MDT assessed Heath as a sexually violent predator, while a fifth MDT member dissented from the MDT’s recommendation. The circuit court had granted Heath’s motion for release based on the MDT’s failure to unanimously agree that Heath met the criteria to be considered a sexually violent predator. Id. at 1259. However, the Second District reversed, finding that the Jimmy Ryce Act does not mandate the unanimity of the MDT’s recommendation, especially when four out of five members of the MDT find that the person meets the sexually violent criteria and recommend the person for commitment. Id. at 1260. Heath also recognized that an MDT’s recommendation is used as a predicate for commencing confinement proceedings under the Jimmy Ryce Act. Id. at 1259-60.
Unlike Heath, in the instant case, we have two MDT reports which concluded that Harden did not meet the sexually violent predator criteria. Moreover, both MDT reports specifically instructed the state attorney not to commit Harden. The state attorney, nevertheless, commenced commitment proceedings. We find that a plain reading of the statute, as well as the Tanguay and Heath cases, establish that an MDT’s positive recommendation serves as a condition precedent to the filing of a petition for commitment.
Recently, in Kephart, supra, the Florida Supreme Court addressed the requirements and procedures for the filing of a probable cause petition under the Jimmy Ryce Act. Although the court's opinion did not address the particular issue raised in this case, its language presupposes that a positive recommendation from the MDT is required before the state attorney may commence civil commitment proceedings. For example, the court stated:
Since the Act permits the state attorney to file a petition based upon the recommendation of the multidisciplinary team ..., we find that the sworn proof for the probable cause petition may be supplied by the prosecutor by swearing to the allegations in the petition or by affidavit attached to the petition from one or more of the mental health professionals.
Kephart, 2006 WL 1548026, at *5, 932 So.2d at 1092. The fact that the state attorney is permitted to file a petition “based upon the recommendation of the multidisciplinary team,” suggests that it may not do so upon a negative finding by the MDT.
Furthermore, the statutory procedures for conducting probable cause hearings set forth in section 394.915, Florida Statutes (2004), also strongly imply that a positive recommendation from the MDT is a condition precedent. This section provides, in pertinent part, as follows:
Upon the expiration of the incarcerative sentence and before the release from custody of a person whom the multidisciplinary team recommends for civil commitment, but after the state attorney files a petition under s. 394.914, the court may conduct an adversarial probable cause hearing if it determines such hearing is necessary.
§ 394.915(2), Fla. Stat. (2004)(emphasis added). We conclude that this section also presupposes that a positive recommendation from the MDT is required before the state attorney may commence civil commitment proceedings.
*1159 Finally, we take guidance in construing the Jimmy Ryce Act from Beasley v. Molett 95 S.W.3d 590 (Tex.App.2002) and In re Commitment of Fisher, 164 S.W.3d 637 (Tex.2005). Both cases trace the procedures of the Civil Commitment of Sexually Violent Predators Act in Texas (the “Texas Act”), which is similar to the Jimmy Ryce Act, noting that a state attorney may file a petition for commitment only after receiving a screening committee’s conclusion that a person suffers from a behavioral abnormality. See Fisher, 164 S.W.3d at 640-41; Beasley, 95 S.W.3d at 606. Under the Texas Act, the screening committee refers to the state attorney only those persons whom the committee determines suffer from a “behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence.” Beasley, 95 S.W.3d at 606; Fisher, 164 S.W.3d at 640-41. Only after receiving the committee’s referrals is the state attorney authorized to make a determination as to which of the referrals should serve as a basis for commitment proceedings. Beasley, 95 S.W.3d at 606. We apply the same reasoning to the instant case, and hold that an MDT’s assessment and recommendation that a person meets the definition of a sexually violent predator is a condition precedent to the filing of a petition for commitment.
In the instant case, the state attorney acted contrary to two MDT assessments and recommendations, which concluded that Harden did not meet the definition of a sexually violent predator. Since a positive MDT assessment and recommendation is a condition precedent to the State’s ability to exercise its discretion in filing a petition for involuntary commitment, we find that the State’s petition was invalid. Thus, the trial court was not authorized to conduct an ex-parte probable cause hearing pursuant to section 394.915.
Accordingly, we grant the petition for a writ of certiorari, quash the order, and remand for further proceedings consistent with this opinion.
Certiorari granted and order quashed.

. Section 394.913(3) states, in pertinent part: (b) Each team shall include, but is not limited to, two licensed psychiatrists or psychologists or one licensed psychiatrist and one licensed psychologist.... The assessment and evaluation shall include a review of the person’s institutional history and treatment record, ... and any other factor that is relevant to the determination of whether such a person is a sexually violent predator.
[[Image here]]
(e) Within 180 days after receiving notice, there shall be a written assessment as to whether the person meets the definition of a sexually violent predator and a written recommendation, which shall be provided to the state attorney.
§ 394.913(3), Fla. Stat. (2004).

. Section 394.914 states, in pertinent part:
Following receipt of the written assessment and recommendation from the multidisciplinary team, the state attorney, in accordance with s. 394.913, may file a petition with the circuit court alleging that the person is a sexually violent predator and stating facts sufficient to support such allegation.
§ 394.914, Fla. Stat. (2004).

. Section 394.915 states, in relevant part:
(1) When the state attorney files a petition seeking to have a person declared a sexually violent predator, the judge shall determine whether probable cause exists to believe that the person named in the petition is a sexually violent predator. If the judge determines that there is probable cause to believe that the person is a sexually violent predator, the judge shall order that the person remain in custody and be immediately transferred to an appropriate secure facility if the person’s incarcerative sentence expires.
§ 394.915, Fla. Stat. (2004).