In re KRIS PORTER.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* KRIS PORTER, Respondent-Appellant.)

Third District No. 80-555

Opinion filed July 30, 1981.

Gerard A. Brost, of Guardianship and Advocacy Commission, of Chicago, for appellant.

Carl E. Hawkinson, State's Attorney, of Galesburg (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

Kris Porter has brought this appeal to challenge the propriety of an order of the circuit court of Knox County providing for his involuntary admission to the Department of Mental Health.

At Porter's commitment hearing, three witnesses testified for the State. First was Margaret Padula, an unlicensed psychologist who had tested Porter and had evaluated him on the basis of those tests. She stated that he showed a thought disorder; his answers were bizarre and out of touch with reality; he showed extremely poor judgment and had no insight into the fact that his judgment was impaired, indicating a deficiency in his ability to care for himself. His responses to questions were irrelevant and not based upon reality; he had much "delusional ideation." When he is frustrated, he becomes hostile and belligerent.

Testifying next was George Adkins, a coordinator of social services at Galesburg Mental Health Center, who had examined Porter and had filled out the first certificate indicating that Porter needed involuntary commitment. Adkins said that he filled out the certificate at 1:40 p.m. on September 11, 1980, and that he personally informed Porter of his rights before they started talking. When it seemed that Porter did not understand, Adkins explained his rights a second time. This time Porter said that he had not understood his rights before but that now he did, and he did not want to talk anymore. However, after a brief time he said he did want to talk and went on with the interview.

Dr. Norberto N. Niebres, a staff physician and psychiatrist at the Galesburg Center, testified that he prepared a second certificate on Porter about 2:30 p.m. on September 11, 1980. Dr. Niebres said that first he saw Adkins about the first certificate, and then he talked to Porter, but that he did not give Porter his rights because the form furnished by the Department of Mental Health stated that rights must be given only for the first

certificate. Dr. Niebres testified to some details of Porter's behavior including his threats to harm members of the staff and his history of drug abuse, and he concluded that Porter could care for his basic needs but that he could harm others.

Porter also testified, stating that he wanted to go to college but that he did not think he could work. He made many statements that were not responsive to the questions asked and that were not sensible or appropriate. At the conclusion of the hearing, the trial court ordered that Porter be involuntarily committed, and this appeal followed.

Porter first contends that the court erred in permitting Dr. Niebres to testify when he had not personally advised Porter of his right to remain silent. Section 3—208 of the Mental Health Code (Ill. Rev. Stat. 1979, ch. 91½, par. 3—208) provides that prior to being examined for purpose of certification as to need for involuntary admission, the person conducting the examination shall inform the person being examined of the purpose of the examination, that he does not have to talk to the examiner, and that any statements he makes may be disclosed at a court hearing on the issue of whether he should be involuntarily admitted. This section concludes: "If the person being examined has not been so informed, the examiner shall not be permitted to testify at any subsequent court hearing concerning the respondent's admission."

At the hearing Porter objected to Dr. Niebres' entire testimony on the ground that he had not admonished Porter as required in section 3—208. The trial court overruled the objection with a finding that Dr. Niebres was present during either all or part of Porter's interview with Adkins when the admonitions were given, and that giving the admonitions once was sufficient in view of the closeness in time between the giving of the admonitions and the interview with Dr. Niebres.

We agree that it would be unnecessarily repetitious and redundant to require both examiners to admonish Porter if in fact both were present when Adkins explained Porter's rights and if the two interviews occurred in immediate succession. Such a situation can be distinguished from that in *In re Rizer* (1980), 87 Ill. App. 3d 795, 409 N.E.2d 383, where the first and second examinations for an involuntary commitment occurred two days apart and where the commitment order was reversed because the second examiner did not advise the patient of his rights.

■■ Porter argues that the State has not sufficiently shown his knowing and voluntary waiver of his privilege against self-incrimination. After carefully reviewing the record, we conclude that the finding of the trial court is supported by sufficient evidence to sustain a finding of waiver. Dr. Niebres testified on direct examination that Porter's behavior was unpredictable. On cross-examination, Dr. Niebres was asked to explain just how Porter's behavior was unpredictable. He explained that at first

Porter was calm but then he stopped talking; later, he came back and started talking again. All of this happened, Dr. Niebres said, after Porter was told of his right to remain silent, and Porter's refusal to talk at that time might have been because he was advised of his rights. Although this testimony does not contain a direct statement that Dr. Niebres was present when Porter was told of his right to remain silent, we believe such an inference, found by the trial judge, is reasonable and can support a finding that the requirements of section 3—208 were met as to Dr. Niebres' examination.

Porter also contends that the State did not prove by clear and convincing evidence that he could reasonably be expected to inflict serious physical harm upon himself or another in the near future or that he is unable to provide for his own basic needs. The record indicates that Porter has been given opportunities to assume some responsibility for himself and has been able to do so. There is some evidence that he has threatened harm to others and he himself admitted striking other patients. Although Dr. Niebres thought he could provide for his own basic needs, such as dress himself, feed himself, and the like, there is other evidence indicating that he cannot be trusted to care for himself without supervision. Porter had been diagnosed as a schizophrenic of the undifferentiated type.

■■ Without setting out the details of the testimony, we are persuaded that the manifest weight of the evidence does sufficiently support a finding that Porter was in need of involuntary admission to the Department of Mental Health. Accordingly, we affirm the judgment of the trial court.

Affirmed.

ALLOY and STOUDER, JJ., concur.