**Doris Ann LANETT, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 05–87–00668–CV.

Court of Appeals of Texas,
Dallas.

April 20, 1988.

Rehearing Denied May 31, 1988.

Steven R. Miears, Dallas, for appellant.

Tom O'Connell, Dallas, for appellee.

Before DEVANY, STEWART and HECHT, JJ.

DEVANY, Justice.

Doris Ann Lanett appeals from commitment proceedings instituted against her by the State. Under an application for temporary hospitalization, a jury trial was held. The jury found that Ms. Lanett was mentally ill. Notwithstanding this jury finding, the trial court independently made its own finding that Ms. Lanett was mentally ill. Ms. Lanett was committed to Wichita Falls State Hospital for a period not to exceed ninety days. In three points of error, Ms. Lanett complains that the trial court erred in the following actions: (1) in conducting a trial by jury over Ms. Lanett's objection; (2) in abridging Ms. Lanett's right to waive assistance of court-imposed counsel and conduct her own defense; and (3) in admitting the testimony of a psychiatrist, who conducted a court-ordered examination of Ms. Lanett while she was in custody, where there was no notice to Ms. Lanett that she had a right to consult with her lawyer prior to the examination. Because we hold that no reversible error exists, the judgment of the trial court is affirmed.

█ In her first point of error, Ms. Lanett complains that the trial court erred in conducting the trial before a jury over her objection. It is unclear from the record whether a jury trial was requested by Mr. Miears, the attorney for Ms. Lanett. Mr. Miears stated that, at the probable cause hearing, he requested of the court coordinator that a jury be available at the time of trial; however, Mr. Miears at no time represented that this was the desire of Ms. Lanett. At the time of trial, before the jury panel was sworn, Ms. Lanett requested a trial before the court and not a jury trial. Without discussion on the request, the judge ruled that he would conduct this case as a jury trial. Shortly thereafter, the jury panel was sworn.

Article 5547–49(a) of the Mental Health Code is as follows:

(a) The hearing for Court–Ordered Temporary Mental Health Services shall be before the court unless a trial by jury is requested by the person or his attorney. The hearing for Court–Ordered Extended Mental Health Services shall be before a jury unless a jury trial has been waived pursuant to Subsection (c) of this section. In no case shall a jury fee be required.

TEX.REV.CIV.STAT.ANN. art. 5547–49(a) (Vernon Supp.1987). Thus, under the Code, an attorney may request a jury trial on behalf of his or her client. A client is ordinarily bound by his or her attorney's actions. *Portnow v. Berg*, 593 S.W.2d 843, 845 (Tex.Civ.App.–Houston [1st Dist.] 1980, no writ).

However, Ms. Lanett did request a bench trial before the jury panel was sworn and, as stated, it is unclear whether Mr. Miears ever did request a jury trial on behalf of Ms. Lanett. Furthermore, article 5547–2 of the Mental Health Code states that it is the purpose of the Code to protect the proposed patient from a public trial or criminal-like proceedings *if so requested*. TEX.REV.CIV.STAT.ANN. art. 5547–2(3) (Vernon Supp.1988). Consequently, in light of the statutory provisions of the Mental Health Code and the record before this Court, we hold that it was error for the trial court to proceed with a jury trial. Now we must address whether this error constitutes reversible error.

█ In her argument under this point of error, Ms. Lanett contends that she was harmed in a number of ways by being forced to have a jury trial. She specifies that she was denied procedural due process, that the three-day jury trial forced her to be confined against her will for a longer period of time, that her absence from the trial because of illness could not

have gone unnoticed by the jury, that the duration of the trial caused her stress and embarrassment, that she and her attorney were prepared for a trial before the court as allowed by the statute and that she had a right to rely on the statute, and that in a trial before the court she would have been better prepared to represent herself, which was her constitutional right.

However, the record indicates that Mr. Miears stated that he *was ready* to proceed to trial by jury on the day of the trial. Thus it does not appear that Ms. Lanett was harmed in her preparation to defend herself simply because the judge ruled that the trial would be before a jury. Although it is unfortunate that Ms. Lanett was subjected to a jury trial over her objections, we are not persuaded that she was harmed by her absence in the courtroom during the proceedings, nor by the possibility that information surrounding her trial may have leaked out into the community. There is no evidence that the jury improperly considered Ms. Lanett's absence from the courtroom during their deliberations. In addition, if Ms. Lanett had wanted the proceedings to be closed to the public, she should have so requested. Furthermore, the record of the proceedings does not indicate that the trial would have taken significantly less time had the jury not been present. We need not address Ms. Lanett's contention concerning harm caused by her desire to represent herself since this issue is resolved under point of error number two. Finally, at the conclusion of the trial, the trial court made its own findings on the case independent of the jury's findings. We hold that Ms. Lanett was sufficiently afforded the due process protections guaranteed by the United States Constitution and the Texas Constitution. U.S. CONST. Amend. XIV, § 1; TEX. CONST. art. I, § 19. Consequently, the first point of error is overruled.

■ In her second point of error, Ms. Lanett complains that the trial court erred in denying her the right to conduct her own defense and waive assistance of court-appointed counsel. Three times prior to the jury panel being sworn, Ms. Lanett asserted her right to represent herself. In response to these requests, the trial court took judicial notice of the certificates of medical examination on file. All three psychiatrists that had examined Ms. Lanett concluded that she was mentally ill. Furthermore, the trial judge had the opportunity to observe Ms. Lanett's behavior in court at least twice. On the day of the trial before the jury was empaneled, Ms. Lanett disrupted the court several times. The court then held that, based upon the record and the court's earlier finding of probable cause for mental illness at the probable-cause-hearing, it would be unwise to allow Ms. Lanett to represent herself at this point.

■ The Mental Health Code does not address a proposed patient's right to waive assistance of court-appointed counsel. In criminal proceedings, once an accused asserts the right to self-representation, the court must ascertain if the defendant is making a voluntary and intelligent relinquishment of the fully known right to appointed counsel. *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938). Because of the nature of mental health proceedings, we believe the same rule should apply as in criminal cases. We hold, therefore, that a respondent in a mental health proceeding has the right to waive court-appointed counsel and represent himself or herself contingent upon the court finding, on the record, that the waiver is voluntary, knowing, and intelligent. *See In the Interest of R.Z.*, 415 N.W.2d 486, 488 (N.D.1987).

In criminal cases, in order to decide whether the defendant's waiver is intelligent and voluntary, the record must reflect that the court inquired into the defendant's background, age, education, and experience. *Geeslin v. State*, 600 S.W.2d 309, 313 (Tex.Crim.App.1980). However, the Texas Court of Criminal Appeals has not set forth "a script for courtroom recitation by trial judges faced with this dilemma." *Blankenship v. State*, 673 S.W.2d 578, 583 (Tex.Crim.App.1984). Thus, no set guidelines exist to determine whether a criminal

defendant is knowingly waiving his right to counsel.

To put the issue of a "knowing waiver" into the mental health context creates an even more difficult dilemma. In an application for court-ordered mental health services, the "proposed patient's" mental health is the central issue. It is imperative that the proposed patient fully understands his or her waiver. It is also incumbent upon the judge to fully determine the proposed patient's capabilities to make a knowing waiver. Once a proposed patient makes a request to waive counsel, the court should not summarily deny it simply because of the nature of the proceedings. In the instant case, the proposed patient had not been declared mentally ill at that point in the proceedings.

Ms. Lanett was picked up by the police and arrested pursuant to a writ of attachment. She was taken to the Collin County jail where she was served with the application for Court-ordered Mental Health Services. Shortly thereafter, two psychiatrists examined her and their certificates of examination were filed with the court. The court granted a Motion for an Order of Protective Custody and a probable cause hearing was held less than a week later. The same judge presided over the probable cause hearing and the final trial for court-ordered mental health services. Thus, the judge was able to draw upon the facts that he had heard in the probable cause hearing in reaching a decision of whether Ms. Lanett was intelligently waiving her right to counsel. However, we are not able to determine what facts the judge relied upon since the probable cause hearing is not in the record before this court. Furthermore, the judge had before him three certificates of medical examination by three different psychiatrists, each of whom had concluded that Ms. Lanett was mentally ill. Ms. Lanett's behavior in the courtroom could have also been considered by the judge in determining her capability of intelligently waiving her court-appointed counsel. The record reflects that immediately before the trial began, Ms. Lanett burst out several times. In fact, at one point, the judge gave Mr. Miears a five minute recess to confer with Ms. Lanett in order to persuade her to stop lying prostrate on the courtroom floor.

In view of these facts, we are not persuaded that it was reversible error for the judge to deny Ms. Lanett's request to waive court-appointed counsel and represent herself. It appears from the record that the court could have found that Ms. Lanett was not capable of knowingly and intelligently waiving her right of court-appointed counsel. Consequently, point of error number two is overruled.

■ In her third point of error, Ms. Lanett contends that the trial court erred in admitting the testimony of a psychiatrist who conducted a court-ordered examination of her while she was in custody, where she had not been warned that she had a right to consult with an attorney prior to the examination. Prior to trial, the judge issued an order requiring Ms. Lanett to submit involuntarily to a medical examination for mental illness. Dr. Richard Neiman examined Ms. Lanett pursuant to this order while she was under protective custody.

At trial, Dr. Neiman testified that he read Ms. Lanett "her rights" before the examination. When questioned about what these rights were, Dr. Neiman referred to a standard one paragraph that is read to "such patient." These "rights" inform the proposed patient that the result of the evaluation may be used in a court proceeding. Prior to the testimony of Dr. Neiman concerning the statements Ms. Lanett made to him during the examination, Ms. Lanett objected to the admissibility of these statements on the grounds that there had been no showing that she had been advised of her right to consult with an attorney *before the examination.* The trial court overruled the objection.

The right of a proposed patient to be advised of her right to consult with an attorney prior to the medical examinations is another issue that is not addressed by the Mental Health Code. The Texas Mental Health Code, unlike that of other states, does not require court-ordered psychiatrists to read proposed patients their constitutional rights before examining them. *See Mat-*

*ter of Collins,* 102 Ill.App.3d 138, 57 Ill. Dec. 633, 429 N.E.2d 531 (1981); *Matter of Shennum,* 684 P.2d 1073, 1078 (Mont. 1984). However, it appears from the record that two psychiatrists read certain "rights" to Ms. Lanett from a form before administering the Mental Status Examination. Both Dr. Neiman and Dr. Griffith testified that they attempted to read Ms. Lanett these rights. Dr. Neiman, however, said that he was interrupted by Ms. Lanett who stated that she understood her rights. Dr. Griffith, on the other hand, stated that he did inform Ms. Lanett of her right to an attorney. The record also reveals that Dr. Griffith was the first psychiatrist to examine Ms. Lanett after she had been picked up by the sheriff's office pursuant to the writ of attachment. Dr. Griffith examined Ms. Lanett while she was being held in jail. After Dr. Griffith concluded that she required hospitalization, Ms. Lanett was taken to court and put under a protective custody order. Ms. Lanett was then transferred to the North Texas Medical Center where Dr. Neiman examined her. All of these activities occurred on February 25, 1987.

Because Ms. Lanett was informed of her right to counsel by Dr. Griffith, we hold that her objection to Dr. Neiman's testimony on the grounds that he did not inform her of her right to counsel after she had already previously been informed of this right is groundless. *Matter of Porter,* 98 Ill.App.3d 869, 54 Ill.Dec. 202, 424 N.E.2d 952 (1981). Consequently, Ms. Lanett's third point of error is overruled. However, there remains the issue of whether the sixth amendment requires that a proposed patient be informed of his or her right to consult with an attorney before submitting to an examination. In the interests of justice, we now address this point.

■ We recognize that other courts have held that due process does not require an attorney be present *at the psychiatric examination. Jones v. State,* 610 S.W.2d 535, 537 (Tex.Civ.App.–Houston [1st Dist.] 1980). *But see, Ughetto v. Acrish,* 130 A.D.2d 12, 518 N.Y.S.2d 398, 405 (1987). Furthermore, this Court has held that the

privilege against self-incrimination does not forbid a court order that requires submission to a psychiatric examination. *Moss v. State,* 539 S.W.2d 936, 948 (Tex.Civ.App.–Dallas 1976, no writ). *See also State for Interest and Protection of Ellenwood,* 567 S.W.2d 251, 253 (Tex.Civ.App.–Amarillo 1978, no writ). However, the Fourteenth Amendment to the Constitution of the United States provides that no person shall be deprived of liberty without due process of law. Furthermore, the subject of an involuntary civil commitment proceeding has the right to effective assistance of counsel at all significant stages of the commitment process. *Ex Parte Ullmann,* 616 S.W.2d 278, 283 (Tex.Civ.App.–San Antonio 1981, writ dism'd). Court-ordered examinations are a significant stage of the commitment proceedings since two certificates of medical examination are required before a hearing may be held on an application for court-ordered mental health services. TEX.REV. CIV.STAT.ANN. art. 5547–46(a) (Vernon Supp.1987). If a proposed patient requests to speak with an attorney, then he or she should be afforded an attorney prior to any psychiatric examinations. We do not hold that the proposed patient must be "mirandized" similar to criminal defendants. We only hold that the right to counsel attaches at the time that the subject of the involuntary commitment is detained and, therefore, that the proposed patient should be informed of this right.

■ In the case now before this court, Ms. Lanett was given written notice that she had a court-appointed attorney with whom she could consult. It is unclear at what point in the milieu of events that occurred on February 25th when Ms. Lanett received this notice. Nevertheless, written notice to a proposed patient that he or she has a court-appointed attorney along with an affirmative response by the proposed patient that they understand they can consult with that attorney is sufficient to satisfy due process requirements. We recognize that involuntary commitment proceedings are not designed to be adversarial; nevertheless, a person's liberty is at stake. Thus, all safeguards should be used to assure that a person is not wrongfully

detained under the guise of mental illness. A person who is detained under an application for court-ordered mental health services has the right to consult with an attorney who can inform the person of his or her rights and of the proceedings that will follow. Furthermore, the attorney is given the opportunity to view the proceedings at an early stage to better prepare for the hearings which immediately follow the examinations. *See Ex Parte Ullmann*, 616 S.W.2d at 283. To deny the proposed mental health patient the information that he or she has a right to consult with an attorney is to deny that patient the right to effective assistance of counsel. We hold that Ms. Lanett was properly informed that she had a right to consult with an attorney.

The judgment of the trial court is affirmed.