

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

Nos. 04-13-00825-CV, 04-13-00827-CV

**IN THE INTEREST OF J.G.**

From the Probate Court No. 1, Bexar County, Texas
Trial Court Nos. 2013-MH-3488, 2013-MH-3502
Honorable Oscar J. Kazen, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:     Karen Angelini, Justice
            Marialyn Barnard, Justice
            Patricia O. Alvarez, Justice

Delivered and Filed:  September 17, 2014

AFFIRMED

Appellant J.G. sought to represent himself in a hearing on the State's applications to temporarily commit him to a mental health care facility and to compel him to receive certain psychoactive medications. The trial judge denied J.G.'s request, proceeded with the hearing, and granted the State's applications. Through court-appointed counsel, J.G. appeals the trial judge's orders. We conclude the trial judge did not abuse his discretion in denying J.G.'s motion to proceed pro se, and we affirm the trial judge's orders.

## BACKGROUND

When law enforcement officers found J.G., he was initially unresponsive. They questioned him, but he was unable to provide coherent responses. He was transferred to a mental health care facility for examination.

After J.G. was examined, the nurse case manager reported J.G. was illogical, tangential, and irritable; he exhibited grandiose delusions but refused all treatment. The State applied for J.G. to be temporarily committed for treatment of mental illness. The trial judge ordered J.G. taken into protective custody and set a date for a temporary commitment hearing. Five days before the commitment hearing, J.G. was examined by Dr. Katharine Dinwiddie, a resident physician in the psychiatry program at University Hospital. She completed a Physician's Certification of Medical Examination for Mental Illness. Two days before the hearing, J.G. was examined by Dr. Kelin Ogburn, a faculty member at University Hospital, Dr. Dinwiddie's supervising physician, and J.G.'s attending physician. Dr. Ogburn also completed a certification.

At the hearing, after receiving the two physician's certifications into evidence, the trial judge questioned J.G. about his ability to represent himself. The trial judge considered the evidence and J.G.'s responses, and the judge denied J.G.'s request to represent himself.

Dr. Dinwiddie was called by the State and cross-examined by defense counsel. J.G. also testified. The trial judge proceeded with the hearings on the State's applications for temporary commitment and permission to compel psychoactive medications. He ordered J.G. committed for temporary mental health services and authorized the State and its agents to administer certain psychoactive medications to J.G. regardless of his refusal.

Through his court-appointed counsel, J.G. appeals. J.G. contends the trial judge abused his discretion by denying his request to represent himself, and he asks this court to reverse the commitment and medication orders.[1]

We begin by reviewing the applicable law and standard of review.

---

[1] The commitment order was limited to a maximum period of ninety days; the period expired several months before this appeal was submitted. Nevertheless, an appeal of orders for temporary commitment and to compel psychoactive medications does not become moot on the patient's discharge. *State v. Lodge*, 608 S.W.2d 910, 912 (Tex. 1980); *In re Breeden*, 4 S.W.3d 782, 784 n.1 (Tex. App.—San Antonio 1999, no pet.).

## RIGHT TO SELF-REPRESENTATION

"[T]he Sixth and Fourteenth Amendments include a 'constitutional right to proceed *without* counsel when' a criminal defendant 'voluntarily and intelligently elects to do so.'" *Indiana v. Edwards*, 554 U.S. 164, 170 (2008) (emphasis in original) (quoting *Faretta v. California*, 422 U.S. 806, 807 (1975)).[2] However, if a "defendant lacks the mental capacity to conduct his trial defense unless represented," the State may insist that the defendant is "represent[ed] by counsel at trial." *Id.* at 174; *accord Chadwick v. State (Chadwick II)*, 309 S.W.3d 558, 561 (Tex. Crim. App. 2010).If a defendant's mental capacity is at issue, "the trial judge is in the best position to make the decision of whether a mentally ill defendant is competent to proceed *pro se."* *Chadwick II*, 309 S.W.3d at 561 (citing *Edwards*, 554 U.S. at 177–78).

To determine whether a defendant has the mental capacity to represent himself, the trial judge may question the defendant "to take realistic account of the particular defendant's mental capacities." *Edwards*, 554 U.S. at 177–78; *Chadwick II*, 309 S.W.3d at 561. The trial judge may consider the defendant's conduct in the courtroom as a measure of the defendant's competence "to conduct his own defense at trial." *Chadwick v. State (Chadwick I)*, 277 S.W.3d 99, 104 (Tex. App.—Austin 2009), *aff'd,* 309 S.W.3d 558 (Tex. Crim. App. 2010). If the trial judge determines the defendant is not competent to represent himself at trial, the trial judge may deny the defendant's request. *Chadwick I*, 277 S.W.3d at 104.

---

[2] A hearing on the State's application for temporary commitment for mental health services and order to compel administering psychoactive medications is a civil proceeding. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034 (West Supp. 2014); *J.M. v. State*, 178 S.W.3d 185, 193 (Tex. App.—Houston [1st Dist.] 2005, no pet.). In such a proceeding, the trial judge may deprive a person of his liberty and compel him to receive medications against his will. *Lanett v. State*, 750 S.W.2d 302, 304 (Tex. App.—Dallas 1988, writ denied). Because of the restrictions on the individual's liberties that are at stake, we apply the self-representation standard developed in criminal proceedings. *Id.*; *cf. Edwards*, 554 U.S. at 174, 177–78 (addressing the waiver of counsel standard for a mentally ill criminal defendant); *Chadwick II*, 309 S.W.3d at 561–63 (same).

## STANDARD OF REVIEW

A trial judge's ruling on a defendant's request to represent himself presents a mixed question of law and fact. *Chadwick II*, 309 S.W.3d at 561 (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). Because this mixed question "turns on an evaluation of credibility and demeanor, we review the trial judge's ruling for an abuse of discretion." *Id.* (citing *Edwards*, 554 U.S. at 177). "We afford almost total deference to a trial judge's rulings on mixed questions of law and fact when the resolution of the issue turns on an evaluation of credibility and demeanor." *Id.* (citing *Guzman*, 955 S.W.2d at 89). "We view the evidence in the light most favorable to the trial judge's ruling." *Id.* (citing *Guzman*, 955 S.W.2d at 89). If the trial judge makes no explicit findings of fact, "we will imply any findings of fact supported by the evidence and necessary to support the trial judge's ruling." *Id.* (citing *Guzman*, 955 S.W.2d at 89).

## APPELLANT'S ARGUMENTS

In his sole issue on appeal, J.G. argues the trial judge reversibly erred by denying him the right to represent himself. He contends the trial judge could not have properly determined his competency to represent himself because he did not inquire into J.G.'s background, age, education, and experience. J.G. does not assert any other basis to challenge the temporary commitment and medication orders.

## ANALYSIS

We begin our analysis by reviewing the evidence before the trial judge.

### A.      Physicians' Certifications

At the beginning of the hearing, before he ruled on J.G.'s motion to represent himself, the trial judge admitted two separate Physician's Certification of Medical Examination for Mental Illness: one from Dr. Dinwiddie, and one from Dr. Ogburn. Dr. Dinwiddie's certification provided results from her examination of J.G. five days before the hearing. Dr. Ogburn's certification

provided results of her examination of J.G. two days before the hearing. Both certifications showed J.G. was exhibiting mania. Dr. Ogburn's certification included, inter alia, the following diagnosis and observations:

- J.G. has bipolar disorder and is manic with psychotic features;
- he is angry, irritable, threatening, yelling, cursing, and refusing medications; and
- he is "unable to report facts in a coherent way."

## B.    J.G.'s Conduct Before First Ruling

As the State moved the court to admit Dr. Dinwiddie as an expert witness in mental illnesses, J.G. interrupted the proceeding and announced he did not want his court-appointed counsel to represent him. The trial judge explained he needed to question J.G. to determine whether his request should be granted. As the trial judge attempted to question him, J.G. repeatedly interrupted the judge. The trial judge patiently and repeatedly reminded J.G. he should not interrupt, but J.G. continued to interrupt the judge.

The trial judge explained to J.G. he would ask him questions to determine his competence to represent himself. The trial judge asked J.G. about his familiarity with the Health and Safety Code, courtroom procedures, rules of evidence, and raising objections. J.G. admitted he had not gone to law school, but insisted "I've done this many times." The trial judge overruled J.G.'s request, and J.G. became more argumentative.

## C.    J.G.'s Conduct Before Second Ruling

After the trial judge denied his request, J.G. continued to interrupt and interject—erratically switching from one topic to another. He insisted "I know more about the law than [others in the courtroom do] and probably you do." He made ad hominem attacks against the two doctors: he accused them of lying and acting like Nazis. He opined he had previously "thought about killing [people like them but he] realized I was a guy who couldn't do it." He commented on the quality

of the food in the "nut cases house," and then described himself as a Hillbilly and a Cherokee Indian. He declared: "I have no fear whatsoever of anything you can do to me. Shoot me in the head right now." Then he returned to criticizing the trial judge as "not good enough." During a lull in J.G.'s outbursts, the trial judge again denied J.G.'s request to represent himself, and proceeded to hear the merits of the applications.

**D.      Trial Judge's Rulings**

J.G. asserts his education and experience qualified him to represent himself in the hearing. But the trial judge was free to consider the doctors' certifications that J.G. was bipolar, was refusing all medications, was exhibiting mania to the point of grandiose delusions, and was "unable to report facts in a coherent way." The trial judge personally witnessed J.G.'s behavior in the courtroom as he attempted to raise objections and question witnesses. *Cf. Chadwick I*, 277 S.W.3d at 104 (defendant with similar behavior). The trial judge also observed J.G.'s rambling monologues, ad hominem attacks, and unregulated outbursts. *Cf. id.*

Here, the trial judge was in the best position to determine J.G.'s mental competency to represent himself. *See Chadwick II*, 309 S.W.3d at 561. The record shows, through his receiving evidence, questioning J.G., and observing his conduct in the courtroom, the trial judge was able "to take [a] realistic account of [J.G.'s] mental capacities." *See Edwards*, 554 U.S. at 177–78; *Chadwick II*, 309 S.W.3d at 561.

Viewing the evidence in the light most favorable to the rulings and affording the appropriate deference to the rulings, *Guzman*, 955 S.W.2d at 89, we conclude the trial judge did not abuse his discretion by denying J.G.'s request to represent himself, *Edwards*, 554 U.S. at 177–78; *Chadwick I*, 277 S.W.3d at 104.

CONCLUSION

Despite Appellant J.G.'s arguments that he was mentally competent to represent himself in his temporary commitment and compulsory medications hearings, the trial judge denied his request, granted the State's applications, and ordered J.G. committed and medicated. Having considered the evidence under the applicable standard of review, we conclude the trial judge did not abuse his discretion in denying J.G.'s request. We affirm the trial judge's orders.

Patricia O. Alvarez, Justice