**Affirmed and Opinion Filed February 23, 2021**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-01053-CV**

### IN THE BEST INTEREST AND PROTECTION OF K.G.

**On Appeal from the County Court at Law No. 2**
**Hunt County, Texas**
**Trial Court Cause No. M-11992**

## MEMORANDUM OPINION
Before Justices Myers, Osborne, and Carlyle
Opinion by Justice Myers

K.G. appeals the trial court's orders that he be committed to a mental institution for ninety days and that he be administered psychoactive medication. Appellant brings seven points of error contending (1) the trial court erred by allowing the State's expert witness to testify about confidential information from appellant without appellant's consent to the testimony; (2) appellant's trial attorney provided ineffective assistance by not objecting to the State's expert witness testifying to confidential information from appellant without appellant's consent; (3) the trial court erred by holding the hearings in this case by remote video conference without obtaining appellant's waiver of appearance in person; (4) appellant's trial attorney

provided ineffective assistance by not objecting to the court holding the hearing by remote video conference; (5) and (6) the evidence is legally and factually insufficient to uphold a verdict of commitment; and (7) the trial court erred when it ordered administration of psychoactive drugs. We affirm the trial court's orders.

## BACKGROUND

On November 6, 2020, the State filed an application for court-ordered mental health services for appellant. The physician's certificate of medical examination stated appellant was brought to the mental hospital after the police received reports that appellant had "suicidal and homicidal ideation and bizarre, psychotic behavior." The doctor concluded appellant was suffering from schizophrenia and experiencing increased paranoia and delusions. The doctor said appellant was "fixated on the fact that everyone is going to die from the pandemic, and that he must kill himself and everyone else." The trial court ordered that appellant be detained at Glen Oaks Hospital pending a probable cause hearing. On November 9, 2020, the court concluded there was probable cause to continue appellant's detention at Glen Oaks Hospital. The court set the case for a hearing on November 23, 2020.

The State also filed an application for an order to administer psychoactive medication to appellant.

On November 23, 2020, the court held a hearing on whether to commit appellant for mental health services and whether to order treatment of appellant with psychoactive medication. Appellant and his treating physician, Dr. Raza Sayed,

testified at the hearing. Because the hearing occurred during the Covid-19 pandemic, the hearing was held through a videoconference pursuant to orders from the Texas Supreme Court. At the conclusion of the hearing on commitment, the trial court ordered that appellant be committed to Glen Oaks Hospital for a period not to exceed ninety days for inpatient care. The court then held a hearing on whether to order the administration of psychoactive medication to appellant. After hearing the evidence, the court ordered that appellant be treated with psychoactive medication.

Appellant appeals the trial court's orders of commitment and treatment with psychoactive medication.

## CONFIDENTIAL INFORMATION

In his first point of error, appellant contends the trial court erred by admitting evidence from Dr. Sayed who testified to statements appellant made to him during the examination. Appellant argues this evidence was inadmissible because the State did not prove Dr. Sayed advised appellant that his statements could be used against him in the committal hearing.

Rule of Evidence 510(b) provides a privilege for patients to prevent any person from disclosing a confidential communication between the patient and mental health professional. TEX. R. EVID. 510(b)(1)(A). This privilege does not apply:

> To a communication the patient made to a professional during a court-ordered examination relating to the patient's mental or emotional condition or disorder if:
>
> (A) the patient made the communication after being informed that it would not be privileged;

–3–

(B) the communication is offered to prove an issue involving the patient's mental or emotional health; and

(C) the court imposes appropriate safeguards against unauthorized disclosure.

*Id.* 510(d)(4).

In this case, Dr. Sayed testified he examined appellant and determined that appellant suffered from schizophrenia. During his testimony, Dr. Sayed mentioned statements appellant made to him during the examination, including that appellant refused to take medication for schizophrenia. Appellant did not object to this testimony.

Appellant argues that Dr. Sayed's testimony concerning appellant's statements violated article 5561h of the Texas Revised Civil Statutes. That statute was repealed in 1991. Act of Apr. 3, 1991, 72nd Leg., R.S., ch. 76, § 19, 1991 Tex. Gen. Laws 515, 647–48. In his brief on appeal, appellant cites Rule 510(d)(4) and states that communications are not privileged if made during a court-ordered examination after the patient was informed that communications would not be privileged. Appellant does not explain why this provision does not apply in this case.

To preserve error for appellate review, a party must make a timely objection and obtain a ruling on the objection. *See* TEX. R. APP. P. 33.1. Because appellant did not object to Dr. Sayed's testimony concerning appellant's statements, no error

–4–

from the admission of this testimony is preserved for appellate review. We overrule appellant's first point of error.

In his second point of error, appellant contends he lacked effective assistance of counsel at the commitment hearing because his counsel did not object to Dr. Sayed's testimony about appellant's statements. "[T]he subject of an involuntary civil commitment proceeding has the right to effective assistance of counsel at all significant stages of the commitment process." *Lanett v. State*, 750 S.W.2d 302, 306 (Tex. App.—Dallas 1988, writ denied). In determining in a civil case whether a party with the right to effective assistance of counsel was denied that right, we apply the standards set forth in *Strickland v. Washington*. *See In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003); *see also Strickland v. Washington*, 466 U.S. 668 (1984).

> With respect to whether counsel's performance in a particular case is deficient, we must take into account all of the circumstances surrounding the case, and must primarily focus on whether counsel performed in a reasonably effective manner. The Court of Criminal Appeals explained that counsel's performance falls below acceptable levels of performance when the representation is so grossly deficient as to render proceedings fundamentally unfair. In this process, we must give great deference to counsel's performance, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, including the possibility that counsel's actions are strategic. It is only when the conduct was so outrageous that no competent attorney would have engaged in it that the challenged conduct will constitute ineffective assistance.

*In re M.S.*, 115 S.W.3d at 545 (footnotes and internal quotations marks omitted). When the error complained of concerns an evidentiary ruling, the appellant also has

the burden to show prejudice from the erroneous admission or exclusion of the evidence. *Id.* at 538.

In this case appellant has not overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, including the possibility that counsel's actions are strategic." *Id.* Appellant's statements to Dr. Sayed were not privileged if Dr. Sayed's examination of appellant was court-ordered and if appellant was advised that his statements would not be privileged. *See* TEX. R. EVID. 510(d)(4). If these requirements were met, then appellant's statements would not have been privileged, and appellant's counsel would have had no ground for objecting on the basis of privilege. The record does not show that Rule 510(d)(4) does not apply. Furthermore, appellant testified at the hearing that he had refused medicine for his mental condition and that he would continue to do so. Any prejudice from counsel's failure to object to Dr. Sayed's testimony was nullified by appellant's own testimony. The record does not show that counsel's failure to object to Dr. Sayed's testimony affected the outcome of the case.

We conclude appellant has not shown his counsel was ineffective for failing to object to Dr. Sayed's testimony of appellant's statements during his mental examination. We overrule appellant's second point of error.

# REMOTE HEARING

In his third point of error, appellant contends the trial court erred by holding the hearing by remote video conference instead of in person in the courtroom. In his fourth point of error, appellant contends his counsel was ineffective for failing to object to this procedure.

Section 574.203 of the Health and Safety Code permits the hearing to be by remote electronic means if (1) the patient and the county or district attorney consent in writing, (2) "the secure electronic communication method provides for a simultaneous, compressed full-motion video, and interactive communication of image and sound among the judge or associate judge, the county or district attorney, the attorney representing the proposed patient, and the proposed patient"; and (3) the patient and the patient's attorney can communicate privately without being heard by the judge or the county or district attorney. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.203(a). The reporter's record states that the hearing was "held by Zoom conferencing." The record does not contain written consent to the remote hearing by the parties. Appellant's attorney did not object to the remote hearing.

The hearing in this case took place on November 17, 2020, during the Covid-19 pandemic. In its First Emergency Order Regarding the Covid-19 State of Disaster, 596 S.W.3d 265 (Tex. 2020) (misc. docket), the Texas Supreme Court ordered:

2. Subject only to constitutional limitations, all courts in Texas may in any case, civil or criminal—and must to avoid risk to court staff, parties, attorneys, jurors, and the public—without a participant's consent:

. . . .

> b. Allow or require anyone involved in any hearing, deposition, or other proceeding of any kind—including but not limited to a party, attorney, witness, court reporter . . . —to participate remotely, such as by teleconferencing, videoconferencing, or other means.

*id.* at 265. The supreme court has renewed that order with substantially similar wording up to and through its November 11, 2020 Twenty-Ninth Emergency Order Regarding the Covid-19 State of Disaster, Misc. Docket No. 20-9135, ¶ 3.c (Tex. Nov. 11, 2020).[1] The orders contain no exception for mental health commitment hearings. *See id.* Pursuant to these orders, the trial court was permitted to require, without the parties' consent, that the hearing be held by video conferencing.

Appellant argues he was harmed by the video conferencing hearing because:

> Appellant could not confer with his attorney in private at counsel table to discuss strategy, evidence and questions to be asked of the witnesses in his defense against the petition for commitment and psychoactive medication. The ability to confer with attorney cannot be done by being put in a "breakout room" during a ZOOM conference. The Appellant being at the mental hospital could not be assured that people were not listening to his conversations with his attorney. This has a chilling effect on a person's absolute right to counsel. Additionally, the Appellant was not able to discuss his testimony with his attorney in private.

---

[1] *See* https://www.txcourts.gov/media/1450050/209135.pdf.

These arguments are not supported by the record. The record does not show where appellant's attorney was during the hearing, whether she was sitting with appellant at the mental hospital or whether she was elsewhere. Nor does the record show the extent of any pretrial conference or lack thereof appellant had with his attorney. Nor does the record show appellant was concerned that persons at the hospital could be listening to his conference with his attorney or that anyone at the hospital was listening to appellant's conference with his attorney. Nothing in the record shows appellant could not discuss the case with his attorney in private.

We conclude appellant has failed to show the trial court erred by holding the hearing by remote video conference. We overrule appellant's third point of error.

In his fourth point of error, appellant contends his counsel was ineffective for failing to object to the trial court's holding the hearing by remote video conference. As discussed above, the trial court had authority to hold the hearing by remote video conference under the supreme court's emergency orders. Therefore, appellant's counsel was not ineffective for not objecting.

Appellant argues he could not discuss his case, the evidence, or the witnesses with his attorney in a private manner. Nothing in the record supports this statement. Appellant also asserts he "was not able to discuss his testimony with his attorney in private." Nothing in the record shows appellant's conversations with his attorney were not private. Appellant also asserts that "not being able to see witnesses deprives Appellant [of] his right to confront and cross-exam[ine] the witnesses."

Appellant states in his brief that the hearing was by "video conference." Dr. Sayed was the only witness at the hearing other than appellant, and nothing in the record shows appellant could not see him testify in the video conference.

We conclude appellant has not shown his attorney was ineffective for failing to object to the hearing being conducted by video conference. We overrule appellant's fourth point of error.

## SUFFICIENCY OF THE EVIDENCE

In his fifth and sixth points of error, appellant contends the evidence is legally and factually insufficient to uphold a verdict of commitment.

Section 574.034 of the Health and Safety Code provides:

(a) The judge may order a proposed patient to receive court-ordered temporary inpatient mental health services only if the judge or jury finds, from clear and convincing evidence, that:

    (1) the proposed patient is a person with mental illness; and

    (2) as a result of that mental illness the proposed patient:

        (A) is likely to cause serious harm to the proposed patient;

        (B) is likely to cause serious harm to others; or

        (C) is:

            (i) suffering severe and abnormal mental, emotional, or physical distress;

            (ii) experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's

basic needs, including food, clothing, health, or safety; and

(iii) unable to make a rational and informed decision as to whether or not to submit to treatment.

HEALTH & SAFETY § 574.034.

The heightened burden of proof, clear and convincing evidence, requires that we utilize a heightened standard of review. *See In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). Clear and convincing evidence is "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979) (per curiam). Evidence that merely exceeds a scintilla is not legally sufficient when the burden of proof is clear and convincing. *See In re J.F.C.*, 96 S.W.3d 256, 264–65 (Tex. 2002).

Satisfying the clear and convincing standard requires expert testimony, HEALTH & SAFETY § 574.034(d), which includes the expert's opinion regarding the necessity of committing the patient, as well as the factual support for the opinion. *State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010); *State ex rel. D.W.*, 359 S.W.3d 383, 386 (Tex. App.—Dallas 2012, no pet.). Additionally, satisfying the clear and convincing burden requires the State to provide evidence of a recent overt act or a continuing pattern of behavior that tends to confirm the distress and deterioration of the proposed patient's ability to function. HEALTH & SAFETY § 574.034(d); *K.E.W.*, 315 S.W.3d at 20; *State ex rel. E.D.*, 347 S.W.3d 388, 392–93 (Tex. App.—Dallas

–11–

2011, no pet.) (evidence of a recent physical or verbal overt act that is probative of the jury's findings when perceived objectively, will satisfy the State's burden). Verbal statements as well as physical actions are "overt acts," *K.E.W.*, 315 S.W.3d at 24, and such verbal statements may support a finding of mental illness and predict future actions resulting from such mental illness. *Id.* at 22.

When evaluating evidence for legal sufficiency under a clear and convincing standard, we review all the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We resolve disputed fact questions in favor of the finding if a reasonable factfinder could have done so, and we disregard all contrary evidence unless a reasonable factfinder could not have done so. *City of Keller v. Wilson*, 168 S.W.3d 802, 817 (Tex. 2005); *In re J.F.C.*, 96 S.W.3d at 266.

In conducting a factual sufficiency review, we consider the evidence that the factfinder could reasonably have found clear and convincing, and then based on the entire record, determine whether the factfinder could reasonably have formed a firm belief or conviction that the allegations in the application were proven. *In re J.F.C.*, 96 S.W.3d at 266; *State ex rel. M.P.*, 418 S.W.3d 850, 853 (Tex. App.—Dallas 2013, no pet.). We consider whether a reasonable factfinder could have resolved disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. "If in light of the entire record, the disputed evidence that a reasonable factfinder could not have

–12–

credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

Dr. Sayed testified that appellant suffered from schizophrenia. The doctor stated that when appellant was admitted to the hospital, "[h]e exhibited paranoia, primarily relating to his family members." Dr. Sayed testified about appellant's severe mental and emotional distress: "He's pacing on the unit, responding to internal stimuli. He appears to be bothered by hallucinations that he's experiencing and he's not eating and drinking and further exacerbating his health conditions. So he appears emotionally distressed by the internal stimuli, by the hallucinations he is experiencing." Concerning appellant's emotional distress, Dr. Sayed testified appellant "has mood swings. He gets angry easily. Frustrated. Slamming doors. At times crying. Breaking down emotionally. So he's not stable emotionally." The trial court took judicial notice of the certificate of medical examination prepared by Dr. Sayed on November 9, 2020. In the certificate, Dr. Sayed stated that appellant "presents a substantial risk of serious of harm to self and others" as shown by his "making threats to harm self & others, psychosis, yelling to kill everyone, violent behavior." Dr. Sayed also testified that appellant was not eating or drinking and that appellant had not eaten or drunk anything in the preceding two days. The doctor testified that not eating and drinking may lead to renal failure. "You may need to go

to the ER for IV fluids. So it's a state of self-neglect, due to psychosis. So that is self harm."

Appellant testified that he had some chicken and a biscuit that morning and that he drinks only milk. He also testified that he ate something the previous night and that he eats "every time except for one time they had fish and one time I gave food to some dude for a cigarette." He also testified, "I don't think I have to eat," and "I think it's a sin to talk about food and water."

Appellant asserts in his brief that the testimony conflicted concerning whether appellant was eating and drinking. Appellant states that Dr. Sayed did not provide "any factual examples of harm caused or to be caused by the patient"; however, the doctor's certificate of medical examination states appellant was "making threats to harm self & others," "yelling to kill everyone," and "threatening to kill himself." The doctor also noted "violent behavior." Appellant also states Dr. Sayed testified that appellant would not take medicine but did not offer a factual basis for that conclusion; however, appellant testified that he refused to take medicine to help with his schizophrenia. Dr. Sayed noted in the certificate of medical examination that appellant said "I don't have a mental illness" and "I don't take medications from people."

After considering all the testimony in the light most favorable to the trial court's finding, we conclude the trial court could have formed a firm belief or conviction that appellant was a person with a mental illness and, as a result of that

–14–

mental illness, was likely to cause serious harm to himself or others. Therefore, the evidence was legally sufficient to support the trial court's order committing appellant.

In arguing that the evidence was factually insufficient to support the trial court's order committing appellant, he asserts the State "produced no factual evidence that the patient was a harm to himself or others, nor that he refused medication, nor any overt act or pattern of behavior." The record shows Dr. Sayed testified appellant was not eating or drinking, which would lead to renal failure. Dr. Sayed and appellant testified that appellant refused medication, and Dr. Sayed noted in the certificate of medical examination that appellant said "I don't take medications from people." Concerning whether there was evidence of an overt act or pattern of behavior, Dr. Sayed stated in the certificate of medical examination that appellant was "making threats to harm self & others" and "yelling to kill everyone." He also noted that appellant was "threatening to kill himself." We conclude the trial court could have found this evidence clear and convincing and have formed a firm belief or conviction that the allegations in the petition were proven. Therefore, the evidence was factually sufficient to support the trial court's order committing appellant.

We overrule appellant's fifth and sixth points of error.

## ORDER FOR ADMINISTRATION OF PSYCHOACTIVE MEDICATION

In his seventh point of error, appellant contends the trial court erred by ordering appellant be treated with psychoactive medication.

Under section 574.106, the trial court may issue an order authorizing the administration of psychoactive medication to a patient who is under a court order to receive inpatient mental health services if the court finds by clear and convincing evidence that "the patient lacks the capacity to make a decision regarding the administration of the proposed medication and treatment with the proposed medication is in the best interest of the patient." HEALTH & SAFETY § 574.106(a), (a-1)(1). The statute requires that the court consider:

> (1) the patient's expressed preferences regarding treatment with psychoactive medication;
>
> (2) the patient's religious beliefs;
>
> (3) the risks and benefits, from the perspective of the patient, of taking psychoactive medication;
>
> (4) the consequences to the patient if the psychoactive medication is not administered;
>
> (5) the prognosis for the patient if the patient is treated with psychoactive medication;
>
> (6) alternative, less intrusive treatments that are likely to produce the same results as treatment with psychoactive medication; and
>
> (7) less intrusive treatments likely to secure the patient's agreement to take the psychoactive medication.

*Id.* § 574.106(b).

At the hearing on the State's application to administer psychoactive medication, the trial court took judicial notice of the evidence at the commitment hearing. Dr. Sayed also testified at this hearing. He told the court that appellant's refusal to acknowledge that he has a mental illness shows appellant has poor insight into the severity of his illness and that appellant lacks the capacity to decide whether to take psychoactive medication. He testified that psychoactive medication was the proper course of treatment for appellant and was in appellant's best interest. He told the court that if appellant were treated and took his medications, then his prognosis would be good. However, if appellant were not treated, then the result would be "[c]ontinued deterioration of his condition. Increased risk of violence towards others and self-neglect." When asked if he had considered any alternative to psychoactive medications, Dr. Sayed answered, "That is the gold standard of treatment for his diagnosis. There are no alternatives."

After hearing the evidence, the court concluded that treatment with psychoactive medication was necessary for appellant to recover, that the treatment was in appellant's best interest, and that appellant lacked the capacity to make a decision regarding the treatment. The court ordered that the hospital was authorized to administer certain psychoactive medications to appellant.

Appellant asserts the trial court's decision was not based on legally or factually sufficient evidence. Appellant first argues the State did not present evidence that appellant would suffer harm without the medication. Appellant is

–17–

incorrect—Dr. Sayed testified appellant's condition would worsen without medication and there would be an "[i]ncreased risk of violence towards others and self-neglect." Appellant argues the trial court did not have evidence of alternative treatments. However, Dr. Sayed testified there were no alternative treatments and that for appellant's condition, treatment with psychoactive medication was "the gold standard." Appellant asserts the State did not present evidence of appellant's inability to understand his situation. Dr. Sayed testified that appellant's inability to comprehend that he had mental illness left him incapable of determining whether to consent to psychoactive medication.

We conclude the trial court's order was supported by clear and convincing evidence that was both legally and factually sufficient. We overrule appellant's seventh point of error.

## CONCLUSION

We affirm the trial court's order committing appellant to Glen Oaks Hospital for a period not to exceed ninety days, and we affirm the order to administer psychoactive medication to appellant.

/Lana Myers/
LANA MYERS
201053F.P05                              JUSTICE

–18–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE BEST INTEREST AND
PROTECTION OF K.G.

No. 05-20-01053-CV

On Appeal from the County Court at
Law No. 2, Hunt County, Texas
Trial Court Cause No. M-11992.
Opinion delivered by Justice Myers.
Justices Osborne and Carlyle
participating.

In accordance with this Court's opinion of this date, we **AFFIRM** the trial court's Writ of Commitment committing appellant to Glen Oaks Hospital for a period not to exceed ninety days, and we **AFFIRM** the order to administer psychoactive medication to appellant.

Judgment entered this 23rd day of February, 2021.